**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **DISTRIBUTED LEDGER, INC** | * | |
| **Plaintiff,** | * | |
| v. | * | **CASE NO.:**  1:21-cv-490 |
| **NEW GREEN NETWORK LLC,** | * | |
| **MILWAUKEE SEO LLC, and SCOTT** | * | |
| **OFFORD** | * | |
| **Defendants.** | | |

**VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING
ORDER, PRELIMINARY INJUNCTION, AND DAMAGES**

NOW COMES, Plaintiff, Distributed Ledger Inc. ("DLI," "Company," or "Plaintiff"), by and through its undersigned counsel of record, and respectfully submits this Complaint against the defendants, New Green Network LLC ("NGN"), Milwaukee SEO LLC ("Milwaukee SEO") and Scott Offord ("Offord") and states and alleges the following:

**PARTIES**

**1.**

Plaintiff, DLI, is and was at all times material, a corporation organized and existing under the laws of the State of Texas with its registered office at 5223 Pointe Spring Xing, Texas 77389 and its main headquarters in Daphne, Alabama.

**2.**

Defendant, NGN, is and was at all times material, a limited liability company organized and existing under the laws of the State of Wisconsin with its principal place of business in Milwaukee, Wisconsin.

**3.**

Defendant, Milwaukee SEO, is a limited liability company organized and existing under the laws of the State of Wisconsin with its principal place of business in the State of Wisconsin and was at all times material the registered agent of NGN.

**4**.

Defendant, Offord, is and was at all times material, a resident of and domiciled in the State of Wisconsin.

**5**.

Defendant, Offord, is and was, on information and belief, at all times material, the sole member and officer of New Green Network, LLC and Milwaukee SEO, LLC.

**6.**

Defendant, Offord, is and was, on information and belief, at all times material, the sole member and registered agent of Milwaukee SEO, LLC.

**7.**

Defendants, NGN, Milwaukee SEO and Offord, are and were, on information and belief, at all times material, the alter ego of the other and conspired together to undertake the acts complained of below (hereafter collectively ("Offord").

## JURISDICTION AND VENUE

**8**.

The amount in controversy exceeds $75,000.00, exclusive of interest and costs.

**9**.

Complete diversity of citizenship exists between Plaintiff and all defendants.

**10**.

This Court has original diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) and diversity of citizenship and amount in controversy.

**11.**

Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), because, among other facts, the controlling contract provides that it is governed by Alabama law and the parties irrevocably consented to suit in any court in Baldwin County, Alabama.

## FACTUAL BACKGROUND

**12.**

Cryptocurrency is in its simplest form a digital currency created through the use of electronic "miners". Transactions using this currency are maintained on a digital ledger.

**13.**

DLI is a blockchain technology service provider with an infrastructure designed to support the blockchain ecosystem and the latest technological advancements. Its services include mining efforts, mining as a service, hardware sales, facility design and management, repair, servicing, and maintenance. DLI provides blockchain network infrastructure hosting and support on a proprietary, secure cloud environment. DLI's customer base includes governments, enterprise corporations and private entities.

**14**.

New Green Network LLC ("NGN") was formed by Offord in or around January, 2018 to provide sales and services to the crypto industry. Its products included Computing Equipment (miners from various vendors), Hardware, Software, Cables, and PDUs (power distribution unit). To facilitate its sales and service, NGN owned various marketing lists, specific channels for sales and services in Telegram, WeChat, among other social media websites.

**15.**

NGN was at all times operated under the brand name cryptomining.tools ("CMT").

**16.**

In or about sometime in 2020, NGN was faced with potential bankruptcy as the result of sales of equipment to customers which was paid for but never delivered due to what was described by Offord as a "supplier issue" with a Chinese supplier.

**17.**

Sometime following notice of NGN's potential demise, DLI communicated to Offord its interest in acquiring NGN's assets to: 1. expand its miner sales business; 2. expand its PDU and cable sales business; 3. further expand its Sales, Marketing and Operational Services, and to expand its branding and reach across the crypto industries.  Negotiations ensued between the parties resulting in Offord's agreement to sell the assets of NGN to DLI, and for him to work as independent contractor with DLI.

**18**.

On or about December 1, 2020, NGN sold and assigned to DLI, its assets under an Asset Purchase Agreement executed by Offord as the "Owner" of NGN.

**19**.

The "Assets" sold by NGN to DLI consisted of the following:

1. "Crypto Mining Tools" ("CMT") brand;

2. Control of 20,000 subscriber blockchain mining email list and multiple popular Telegram groups;

3. Cryptomining.Tools website, apps and code base;

4. Crypto Mining Tools Podcast;

5. New Green Network LLC customer base, user list;

6. Business development and access to relationships with hardware and software vendors worldwide;

7. 50% ownership in a pending trademark for the phrase "Blockchain Mining" for use in advertisements, magazines, tradeshows, etc.; and

8. Miner sales business and PDU design and manufacturing relationships.

**20**.

In consideration for the sale and assignment of these assets, DLI paid to Offord (NGN) five hundred thousand (500,000) of Class A voting stock in DLI of which Offord has acknowledged receipt and actually voted. Please see **Exhibit A.**

**21.**

On or about December 1, 2020, and following the sale of the Assets, DLI and Offord entered into an Independent Contractor Agreement ("Agreement"). This agreement provided for NGN to "actively manage" the Assets sold to DLI. A true and correct copy of the Agreement is attached hereto as **Exhibit B.**

**22.**

In furtherance of its duties, Offord (NGN) was provided the title of "Asset Management Director" which title was assumed by Offord as the owner, sole member/officer of NGN for which he was paid a salary by DLI.

**23.**

Offord, at all times material, held himself out to DLI, its actual and potential customers, and vendors as Asset Management Director of DLI.  Please see **Exhibit C-1 and C-2.**

**24.**

During the time of Offord's employment, DLI funded and developed multiple related business units which are now threatened and in jeopardy solely as a result of Offord's recent actions as detailed more fully hereafter. These business units include, but are not limited to, Equipment Sales, Equipment Repairs, Logistics, and Conference Services. The actual and potential damage to DLI are in the tens of millions of dollars.

**25.**

Offord, as Asset Management Director of DLI, was obligated individually and as the owner and agent of NGN to always act in the best interest of DLI and to comply with the obligations and duties undertaken by NGN in its contract with DLI.

**26.**

In addition to his duties of actively managing the assets sold by NGN to DLI, Offord was also responsible for sales and marketing of "miners" on behalf of DLI, and of overseeing and directing DLI marketing and sales and related personnel.

**27.**

DLI, following its acquisition of the Assets from NGN, began to run most of its sales and marketing efforts through its recently acquired cryptomining.tools domain. Offord, at his insistence as Asset Management Director, retained administrative control of the domain for cryptomining.tools and continued to require DLI employees to use his personal server at "offord.me" to gain access to the domain.

**28.**

Subsequent to assuming the title and responsibilities of Asset Management Director, Offord was discovered by DLI to have engaged in, among other, the following conduct in breach of his and NGN's contractual covenants, obligations and duties:

a. Instructed participants in a forthcoming crypto mining conference sponsored by DLI to pay their registration fees for the conference to the bank account of Milwaukee SEO, LLC rather than DLI.

b. Offord, despite the sale to DLI of 20,000 subscriber blockchain mining email list and multiple popular Telegram groups, failed and refused to turn over administrative control of the Telegram groups. Access to this information and control were and are essential to DLI's marketing efforts and sales leads. On information and belief, other Telegram groups were created by NGN or Offord during his employment with DLI, but never disclosed to DLI, the actual owners of these Telegram groups.

c. Offord, despite the sale to DLI of cryptomining.tools domain and all associated accounts for management, marketing and correspondence, failed and refused to surrender these records, information and administrative control of the domain (G-suite, marketing

mailer apps, mailing lists, signup forms, etc.) to DLI converting them to his and own use and benefit.

d. Offord, despite the sale of NGN's customer base, failed and refused to provide an export spreadsheet/list from to DLI. On information and belief, Offord migrated this customer/vendor list to another account held in the name of Milwaukee SEO, LLC, another company owned by Offord.

e. Despite NGN's sale of these assets to DLI, Offord failed and refused to provide to DLI a comprehensive list of hardware and software vendors, suppliers, brokers and contact lists and, on information and belief, converted these lists to himself for his own benefit. This refusal has frustrated DLI's access to and relationship with vendors worldwide.

f. Offord, despite his and NGNs' representations and covenants to DLI that NGN was owner of 50% interest in the pending trademark for the phrase "Blockchain Mining", failed and refused to transfer to DLI this 50% interest. On information and belief, this interest was not owned by Offord or NGN and was not theirs to sell.

g. Offord, failed and refused to provide to DLI the design discussions, drawings, and related material for PDU current and future designs, although acknowledging that DLI had acquired these assets in the Asset Purchase Agreement.

h. Offord, as Asset Management Director, routinely exceeded his authority, directing other employees to undertake duties and assignments outside their scope of employment for his personal benefit, including without limitation, demanding that employees perform tasks within his duties, directing employees to take notes for him, as well as summarizing

videos and meetings. These ultra vires acts resulted in a hostile work environment for the company's employees.

i. Offord, intentionally and without appropriate authority and in violation of company policy, shipped to a customer of DLI 28 more units than paid for by the customer at a loss to DLI in excess of $150,000. On information and belief, these extra units were shipped to provide goodwill to Offord for his personal benefit.

j. Offord, as Asset Management Director, was responsible for, among other things, negotiating with customers and vendors of DLI. On information and belief, Offord, intentionally and maliciously, interfered with DLI's potential contracts with customers, including without limitation, Bitmain. As a result of his actions and interference, DLI was unable to timely confect a contract with Bitmain resulting in a loss to DLI in an amount believed to exceed $100 million.

k. Offord, while acting as Asset Management Director for DLI, used DLI time, channels, and resources acquired from NGN to sell his/NGN equipment without prior authorization, notification to or coordination from DLI.

l. Offord, while acting as Asset Management Director for DLI, used company time, channels, and resources acquired from NGN to market and sell equipment through another of his companies, Milwaukee SEO, LLC, in competition with and to the detriment of DLI with the intention of creating a back fall of revenue for personal gain.

m. Offord, following his termination from DLI, in violation of applicable law, trespassed on the property of DLI, threatened DLI employees, and stole and/or unlawfully removed property belonging to DLI.

n. Offord, in breach of his duties and for his personal gain, installed video and audio recording equipment to secretly record employees of DLI without their knowledge or consent and used the recordings against them.

o. Offord, acting beyond his authority, executed contracts on behalf of DLI with Bitmain for equipment and training operations. These contracts resulted in the loss of considerable time and money to DLI.

p. Charged excessive and inappropriate expenses to his corporate credit card.

q. Transferred mining PDU's to a personal friend without authorization or approval.

t. Instructed clients of DLI to send payment for the purchase of miners from DLI to the bank account of Milwaukee SEO, LLC rather than DLI.

u. Offord, as the administrator for the Cryptomining.tools domain, intentionally and maliciously terminated access of DLI employees to their CMT emails thereby interfering with and frustrating their communications with customers, potential customers and vendors to the detriment of DLI and to the benefit of Offord. All company sales efforts and most its marketing were run through this domain instead of DLI channels at the insistence of Offord. Please see **Exhibit D.**

t. Other acts to be shown at the time of trial.

## <u>TERMINATION OF OFFORD FOR CAUSE</u>

### 29.

Paragraph 3 of the Agreement provides, in pertinent part, that Contractor (Offord) may be terminated by DLI ("Corporation") upon 30-day notice unless termination is for Cause, in which

event the Notice of Discharge shall state such Cause, and in such event the effective date of termination may, if stated in the notice, be immediate upon giving the notice.

**30**.

Paragraph 6 (d) of the Agreement provides, in pertinent part, that "Cause shall exist if Contractor", among other things:

(2) Willfully engages in conduct demonstrably and materially injurious to the goodwill and reputation of the Corporation.

(5) Without due cause fails within 30 days after receipt of notice to follow any lawful order given by or under direction of the CEO.

(6) Does not correct within 30 days after receipt of notice any act or omission that, in the opinion of the Corporation's legal counsel, gives rise to a cause of action by the Corporation or its Board personally against Contractor to specifically enforce or restrain some action for purpose of avoiding some loss or damage, or to recover losses or damages, for an amount excess of $10,000.00.

(7) Does not correct within 30 days after receipt of notice any act of dishonesty against the Corporation.

(8) Fails within 30 days of receipt of notice to cure any violations of Contractor's covenants under Section 7.

(9) Intentionally criticizes, ridicules or disparages the Corporation or the Board in any communications or with any customer or client, vendor or supplier, or in any public statement.

**31.**

Paragraph 7 of the Agreement entitled "Contractor Covenants" provides in pertinent part, that:

(a)      No Unauthorized Competing Concern. (1) During the term of Contractor's employment and during any Continuation Period, either alone or as a member of a partnership or association, or as an officer, director, advisor, consultant, agent, or employee of any other organization, be engaged in or concerned with any other duties or pursuits requiring Contractor's active personal services that will conflict with Contractor's ability or objectivity in performing Contractor's obligations under this Agreement.

(b)      No Disloyal Act. During the term of Contractor's employment, take any action regarding the Corporation, its operations or property, that in good faith Contractor knows or should reasonably know is opposed to the best interests of the Corporation.

(c)      No Unauthorized Usurpation of Corporation Opportunity. During the term of Contractor's employment, take advantage of any Corporation opportunity without first offering the opportunity with full disclosure of material facts to the Corporation and receiving notice that the Corporation has declined such opportunity. For this purpose, "Corporation Opportunity" means any opportunity to engage in a business activity: (1) Of which Contractor becomes aware (A) by virtue of Contractor's relationship with, or in connection with performing functions in the business of, or in using facilities or other resources of the Corporation, and (B) under circumstances that should reasonably lead Contractor to believe that the person offering the opportunity expects it to be offered to

the Corporation; or (2) which Contractor knows is closely related to a business in which the Corporation is engaged or expected to engage.

(d)      No Unauthorized Disclosure. During the term of Contractor's employment and thereafter, make or cause to be made any unauthorized disclosure or other use of any confidential information regarding the Corporation or any of its activities and operations, except to the extent reasonably necessary or appropriate in connection with the performance by Contractor of Contractor's authority and responsibility under this Agreement or as may be legally required; provided, however, that nothing herein contained shall preclude the use or disclosure of any information known generally to the public (other than as a result of disclosure by Contractor in violation of this Section 7(d)).

(e)      No Disparagement. During the term of Contractor's employment, criticize, ridicule or make any statement which disparages or is derogatory of the Corporation or any person affiliated with the Corporation in any communications with any customer or client, vendor or supplier of the Corporation or in any public statement.

**32**.

The above acts and others, to be shown at the time of trial, constitute "Cause" for immediate termination as provided under the Independent Contractor Agreement, in that defendant, Offord:

1.   Willfully and knowingly engaged in misconduct that has caused significant harm and damage to DLI and its shareholders;

2.   Engaged in breaches of his contractual duties to the company;

3. Committed material breaches of the Independent Contractor Agreement including, without limitation, engaging in business in competition with DLI and its company purposes;

4. Provided false and misleading material information to the Company's CEO and COO to disguise his actions;

5. Withheld from DLI material information and records purchased by DLI for his own benefit;

6. Acted on multiple occasions without the requisite approval and authorization of the Company;

7. Usurped and or converted and/or stole property of Company for his own use and benefit;

8. Usurped DLI business opportunities for his own benefit;

9. Maliciously terminated access of DLI employees to the company's Cryptomining.tools domain and website, as well as other Telegram groups; and

10. Used and disclosed confidential Company information including trade secrets and processes.

**33**.

As a result of these and other action, Offord was terminated on or about October 31, 2021, for Cause. Offord has since publicly acknowledged his termination on his Twitter feed. Please see **Exhibit E.**

**CAUSES OF ACTION**

**COUNT 1**

**BREACH OF CONTRACT**

**34**.

The averments of Paragraphs 1 through 33 are incorporated by reference herein as if set forth in full below.

**35**.

The acts complained of above constitute numerous breaches of Offord's contractual duties to DLI.

**36**.

In his capacity as Asset Management Director, Offord had extensive access to DLI's proprietary and trade secret information and records including, without limitation, its customer base, processes, vendor lists, all of which are subject to rigorous security measures to ensure the information remains confidential and private.

**37.**

Offord had a contractual duty under the terms of the Independent Sales Agreement, as well as a duty of loyalty under Alabama law not to disclose or improperly use DLI's confidential information for his own benefit and to the detriment of DLI.

**38**.

In violation of his contractual duties and duty of loyalty to DLI, Offord misappropriated confidential records business information to directly compete with DLI.

**39**.

In further violation of his contractual duties and covenants, Offord has misappropriated the 20,000 subscriber blockchain mining email list and multiple popular Telegram groups, and failed and refused to turn over administrative control of any of the Telegram groups. Access to this information and control were and are essential to DLI's marketing efforts and sales leads. On information and belief, other Telegram groups were also created by Offord while working for DLI, but never disclosed to DLI, the actual owners of these Telegram groups.

**40**.

In further breach of his contractual duties, Offord failed and refused to surrender administrative control of the cryptomining.tools domain (G-suite, marketing mailer apps, mailing lists, signup forms, etc.) to DLI, instead converting them to his own use and benefit. Following his termination from DLI, Offord cut off all access to the domain by DLI employees **(Exhibit D).**

**41**.

Offord has breached, and is continuing to breach, his duties to DLI by way of his misappropriations, theft and continued use of DLI's assets and trade secrets and confidential information for the benefit of himself and others and has thereby caused and continues to cause DLI immediate and irreparable harm as well as damages. Offord's conduct is continuing and deliberate and is causing, and will continue to cause, irreparable harm to DLI.

**42**.

Offord has undertaken a pervasive course of conduct over the past 11 months that has repeatedly breached the contractual covenants contained in the Independent Agreement. Specifically, but not limited to, those outlined above.

**43**.

By virtue of his continued contractual breaches, as pled herein, DLI is entitled to injunctive relief enjoining Offord from continued or further misconduct.

## COUNT II
## VIOLATION OF ALABAMA TRADE SECRETS ACT

**44**.

The averments of Paragraphs 1 through 43 are incorporated by reference herein as if set forth in full below.

**45**.

DLI has developed significant amounts of information about its business systems, processes and methods of operation. DLI has also acquired significant amounts of information from its purchase of the Assets of NGN. As a result of Offord's relationship with DLI and his position as Director of Asset Management, Offord was given access to valuable confidential trade information and trade secrets to facilitate his duties. Such information included, without limitation, all aspects of the confidential and proprietary materials, information, systems, processes, customers and pricing.

**46**.

Pursuant to the Alabama Trade Secrets Act, Ala. Code § 8-27-1, et seq, such information constitutes trade secrets because such information is (1) intended for use in DLI's trade and business, (2) is embodied in various compilations, techniques and/or processes used in DLI's business, (3) is not publicly known and is not generally known in the trade, (cannot be readily ascertained or derived from publicly available information, (5) is subject to efforts that are reasonable under the circumstances to maintain secrecy, and (6) has significant economic value.

**47**.

Offord was provided such information and materials, or access to such information and materials, with the understanding and agreement that such information and information would not be disclosed and/or used during or following termination of his employment, and has violated and breached the confidence and expectation of loyalty and trust placed in him by DLI. Thus, Offord's willful and malicious misappropriation is actionable pursuant to the Alabama Trade Secrets Act, as DLI has been damaged by such misappropriation. Ala. Code § 8-27-4.

**48.**

As a result of Offord's multiple violations of the Alabama Trade Secrets Act, DLI is entitled to injunctive and such other equitable relief as may be appropriate with respect to both his actual and threatened misappropriation of DLI's trade secrets, recovery of all profits and other benefits conferred by the misappropriation that are attributable to the misappropriation, and all actual damages suffered by DLI as a result of the misappropriation.

**COUNT II**

**FRAUD**

**49**.

The averments of Paragraphs 1 through 48 are incorporated by reference herein as if set forth in full below.

**50**.

Offord, on information and belief, never intended to comply with his obligations or covenants under the Independent Sales Agreement. Rather he, at all times material, intended to use his position as Asset Management Director to divert the company assets and resources to his own use and benefit, including maintaining control of the Assets sold by him to DLI which all times relied on his good faith to their detriment. Offord's actions were made maliciously and with an intent to deceive DLI as a result of which DLI was caused damage as a proximate consequence.

**51**.

As a direct result of his misrepresentations, deception, fraud and deceit, DLI was caused to suffer actual damages for which Offord is liable. As a further result of his actions, Offord is also liable to DLI for punitive damages.

**COUNT III**

**DEFAMATION**

**52.**

The averments of Paragraphs 1 through 51 are incorporated by reference herein as if set forth in full below.

**53**.

Offord, on information and belief, before and following his termination from DLI, falsely communicated to DLI customers, vendors and others in the Crypto Industry that DLI's new sale channels were "fake" as well as other allegations designed solely to harm DLI for his own benefit.

**54**.

The actions of Offord have and are continuing to cause great and irreparable harm to DLI.

## COUNT IV

### REQUEST FOR TRO, PRELIMINARY AND PERMANENT INJUNCTION AGAINST OFFORD, NEW GREEN NETWORK AND MILWAUKEE SEO

**55**.

The averments of Paragraphs 1 through 54 are incorporated by reference herein as if set forth in full below.

**56**.

Plaintiff, DLI, pursuant to Rule 65 of the Federal Rules of Civil Procedure, seeks a temporary restraining order and preliminary injunction directing defendants, their agents, servants, employees and attorneys, and all others in active concert or participation with them, to be enjoined or directed as follows:

a. To immediately transfer to DLI administrative control of the Cryptomining.tools domain and website;

b. To immediately transfer all emails and other communications received by the Offord.Me server to or from DLI or its employees following Offord's termination of their access to the Cryptomining.tools domain and website;

c. To immediately transfer administrative control of the Telegram Groups to DLI, along with all emails to or from DLI or its employees following;

d. To cease using and to immediately return any of the Assets in defendants' possession or control;

e. To immediately cease using, advertising or displaying the brand name cryptomining.tools;

f. Promptly return to DLI all proprietary, confidential or trade secrets in defendants' possession, custody or control, including without limitation all customer and vendor lists, records, files, processes;

g. Promptly cease all involvement with the upcoming trade conference scheduled for February, 2022 including, without limitation, acceptance of registration or other funds from potential registrants;

h. Promptly return to DLI all funds received in connection with the upcoming trade conference and provide a full accounting of all registrants and funds received and expended;

i. Refrain from any disparagement of DLI, its employees, equipment, sales channels or any other aspect of the company; and

j. Immediately turn over to DLI all books and records of DLI, all Assets sold by

NGN/Offord to DLI by that Asset Purchase Agreement dated Dec. 3, 2020, and all

related and subsidiary companies presently in their possession.

**57**.

DLI requires a temporary restraining order and preliminary injunction to protect it from

irreparable injury to preserve the status quo until the district court renders a meaningful decision

on the merits. Plaintiff has shown herein and will show at the time of trial that: (1) it has a

substantial likelihood for success on the merits; (2) that it will suffer irreparable harm if the relief

is not granted; (3) that the threatened injury to DLI outweighs any potential harm to the non-

movant; and, (4) that the relief will not disserve the public interest.

## **DAMAGES**

**58**.

Offord is liable to DLI for damages resulting from his contractual breaches, any amounts

by which the defendant has been unjustly enriched in connection therewith, along with court

costs and attorney's fees incurred by DLI in the initiation and prosecution of this proceeding, and

exemplary damages.

## **PRAYER FOR RELIEF**

**59**.

WHEREFORE, Plaintiff, DLI, Inc., requests judgment, issuance of citations, summons

and process as requested herein on Defendants, Scott Offord, New Green Network, LLC and

Milwaukee SEO, LLC and that after due proceedings there be judgment in favor of Plaintiff,

DLI, Inc and against Defendants, Scott Offord, New Green Network, LLC and Milwaukee SEO, LLC with legal interest thereon, all costs and reasonable attorney's fees to be fixed by this Honorable Court.

Plaintiff, DLI, Inc. further prays for a temporary restraining order and preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure, restraining and/or ordering Defendants, Scott Offord, New Green Network, LLC and Milwaukee SEO, LLC:

a. To immediately transfer to DLI administrative control of the Cryptomining.tools domain and website;

b. To immediately transfer all emails and other communications received by the Offord.Me server to or from DLI or its employees following Offord's termination of their access to the Cryptomining.tools domain and website;

c. To immediately transfer administrative control of the Telegram Groups to DLI, along with all emails to or from DLI or its employees following;

d. To cease using and to immediately return any of the Assets in defendants' possession or control;

e. To immediately cease using, advertising or displaying the brand name cryptomining.tools;

f. Promptly return to DLI all proprietary, confidential or trade secrets in defendants' possession, custody or control, including without limitation all customer and vendor lists, records, files, processes;

g. Promptly cease all involvement with the upcoming trade conference scheduled for February, 2022 including, without limitation, acceptance of registration or other funds from potential registrants;

h. Promptly return to DLI all funds received in connection with the upcoming trade conference and provide a full accounting of all registrants and funds received and expended;

i. Refrain from any disparagement of DLI, its employees, equipment, sales channels or any other aspect of the company; and

j. Immediately turn over to DLI all books and records of DLI, all Assets sold by NGN/Offord to DLI by that Asset Purchase Agreement dated Dec. 3, 2020, and from all related and subsidiary companies presently in their possession.

Respectfully Submitted,

**LAW OFFICE OF
DENNIS D. GREEN, JR., P.C.**

  /s/ Dennis D. Green, Jr.     
Dennis D. Green, Jr., Esq.
Alabama Bar No. 7616-U22C
dennis@lawofficeofdennisgreen.com
132741 P.O. Box
Spring, Texas 77393
(470) 774-1288

***Attorneys for Plaintiff, Distributed Ledger Inc.***

**Defendants are to be served by certified mail at the following addresses:**

Scott Offord
*Through personal service*
16520 La Vela Circle Upper
Brookfield, WI 53005

New Green Network LLC
*Through its registered agent*
Milwaukee SEO LLC
16520 La Vela Circle Upper
Brookfield, WI 53005

Milwaukee SEO LLC
*Through its registered agent*
Scott Offord
16520 La Vela Circle Upper
Brookfield, WI 53005-3242

## **VERIFICATION**

STATE OF MICHIGAN            )
COUNTY OF DELTA             )


      I, James Andersen, of full age, being duly sworn according to law, upon his oath, deposes and says:

      1)     I am Vice President of Operations of Distributed Ledger, Inc., which is the plaintiff of this action.

      2)     I have read the foregoing Complaint and all the allegations contain therein. Except as to allegations alleged upon information and belief, which allegations I believe to be true, all the allegations in the Complaint are true based on my personal knowledge, the records of Distributed Ledger, Inc., or information available through employees or representatives of Distributed Ledger, Inc.


_____
JAMES ANDERSEN


SWORN TO AND SUBSCRIBED before me on this 10th day of November, 2021.


_____
NOTARY PUBLIC

HEIDI M. BULLEN
NOTARY PUBLIC, STATE OF MI
COUNTY OF DELTA
MY COMMISSION EXPIRES Feb 1, 2024
ACTING IN COUNTY OF Delta

My Commission Expires:  2-1-24

## <u>CERTIFICATION OF EFFORTS TO PROVIDE</u>
## <u>NOTICE TO DEFENDANTS</u>

STATE OF FLORIDA

COUNTY OF ESCAMBIA

Before me, Notary Public, came and appeared:

**DENNIS D. GREEN, JR.**

an individual of the full age of majority, domiciled and residing in Harris County, Texas who,

after being duly sworn did depose and state the following:

1.  That he is attorney of record for Distributed Ledger, Inc., in the above captioned
    matter;

2.  That contemporaneously with the filing of this complaint, a copy of the complaint has
    been forwarded by electronic mail to the counsel of the defendants, Michael
    Brandwein. Immediately upon learning of the hearing date for the Temporary
    Restraining order, or in the alternative, the Preliminary Injunction, counsel for
    Distributed Ledger, Inc. will call and email Defendants through their counsel and
    provide them notice of the hearing;

3.  That even if Defendants are unable to attend the hearing, however, the relief
    requested herein should be granted because, as evidenced in the Complaint and
    exhibits submitted herewith, Plaintiff is and will continue to suffer irreparable harm.

*/s/ Dennis D. Green, Jr.*
_____
DENNIS D. GREEN, JR.

1