IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **DISTRIBUTED LEDGER, INC** * | |
| * | |
| Plaintiff, * | |
| v. * | CASE NO.: 1:21-cv-490 |
| * | |
| **NEW GREEN NETWORK LLC,** * | |
| **MILWAUKEE SEO LLC, and SCOTT** * | |
| **OFFORD** * | |
| * | |
| Defendants. * | |

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

NOW COME the Defendants, New Green Network LLC ("NGN"), Milwaukee SEO, LLC ("Milwaukee SEO") and Scott Offord ("Offord") (collectively "Defendants"), by and through their attorneys, SmithAmundsen, LLC, and for their Response in Opposition to Plaintiff Distributed Ledger, Inc.'s ("DLI" or "Plaintiff") Motion for Temporary Restraining Order and Preliminary Injunction (the "Motion"), states as follows:

I.  INTRODUCTION

Plaintiff's Complaint and Motion are totally devoid of any actual and factual evidence. Although the Complaint is verified, few specific facts rise above the level of conclusory allegations to indicate why the Plaintiff should be immediately entitled to the extraordinary remedy of a temporary restraining order. Nor does the pleading specifically outline why any serious harm is imminent. Plaintiff's self-serving and conclusory allegations, unsupported by any evidence, do not come close to establishing the requirements for an injunctive relief. Absent specific and non-conclusory facts supporting Plaintiff claims, and without a specific description of why it is entitled to immediate injunctive relief, Plaintiff's request

1

for temporary restraining order and preliminary injunction should be denied, as it has not clearly carried its burden of persuasion.

## II.     STATEMENT OF FACTS

Defendant Offord founded NGN and Milwaukee SEO, which provide sales and services to the crypto industry. *See* a copy of Offord's Affidavit attached hereto as **Exhibit A**, ¶1. On December 1, 2020, NGN entered into an Asset Purchase Agreement with DLI and sold a portion of NGN's assets to DLI, in exchange for one million shares of DLI's stock. *See id.*, ¶3. On the same day, NGN and DLI also entered into an Independent Contractor Agreement for NGN to actively manage the assets NGN sold to DLI. *See id.*, ¶6. Offord performed the work on behalf of NGN under the Independent Contractor Agreement as the Asset Management Director of DLI. *Id.*, ¶7.

On October 27, 2021, the CEO of DLI terminated Offord/NGN as an independent contractor via a text message to Offord, stating that "You are no longer a contractor for DLI." *See id.*, ¶¶10-11.

## III.    LEGAL STANDARD

"The purpose of a temporary restraining order, like a preliminary injunction, is to protect against irreparable injury and preserve the status quo until the district court renders a meaningful decision on the merits." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1231 (11th Cir. 2005).

To prevail on a request for injunctive relief, the movant must show:

> (1) a substantial likelihood that he will ultimately prevail on the merits; (2) that he will suffer irreparable injury unless the injunction issues; (3) that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) that the injunction, if issued, would not be adverse to the public interest.

*Zardui-Quintana v. Richard*, 768 F.2d 1213, 1216 (11th Cir. 1985). The Court should be mindful that a preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant has clearly satisfied the burden of persuasion as to the four requisites. *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998). Injunctive relief will not issue unless the alleged misconduct is imminent and no other relief or compensation is available. *Cunningham v. Adams,* 808 F.2d 815, 821 (11th Cir.1987). "The same standard applies to a request for a temporary restraining order as to a request for a preliminary injunction." *ARGO Corp. v. Massey Tractor Co., Inc.*, 2009 WL 1010047, *1 (S.D. Ala. 2009).

## IV.     ARGUMENTS

**A.     Plaintiff's request of injunctive reliefs (a) through (c) in the Motion must be denied because Plaintiff fails to demonstrate that it would suffer irreparable harm should those reliefs not be granted.**

Irreparable harm and inadequacy of legal remedies are the bases for injunctive relief in the federal courts. *Ne. Fla. Chapter of Ass'n of Gen. Contractors v. City of Jacksonville, Fla.,* 896 F.2d 1283, 1285 (11th Cir. 1990). An irreparable injury is one that "cannot be undone through monetary remedies." *Id.* And the irreparable injury "must be neither remote nor speculative, but **actual and imminent**." *Id.* (emphasis added).

The Eleventh Circuit has emphasized that "[a] showing of irreparable injury is the *sine qua non* of injunctive relief" and that "the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper." *Siegel v. LePore,* 234 F.3d 1163, 1176 (11th Cir. 2000). "Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *United States v. Jefferson*

*County,* 720 F.2d 1511, 1520 (11th Cir. 1983). Simply put, "economic losses alone do not justify a preliminary injunction." *BellSouth Telecommunications, Inc. v. MCIMetro Access Transmission Services, LLC*, 425 F.3d 964, 970 (11th Cir. 2005).

DLI's Motion for Temporary Restraining Order and Preliminary Injunction is entirely premised on its conclusory and unsupported allegations of Defendants' misconduct in the Complaint, none of which demonstrate that DLI needs the protection of injunctive relief against a substantial threat of imminent <u>irreparable</u> injury.

The first injunctive relief Plaintiff seeks in the Motion is to have Offord immediately transfer the administrative control of the [cryptomining.tools](cryptomining.tools) domain and website. *See* Dkt. # 9, ¶a. However, Plaintiff fails to show that the absence of the administrative control of the said domain and website will result in any irreparable harm to DLI. In the Complaint, Plaintiff mistakenly makes a groundless allegation that DLI began to run most of its sales and marketing efforts through the [cryptomining.tools](cryptomining.tools) domain following its acquisition of NGN's assets. *See* Dkt. #1, ¶27. Plaintiff also mistakenly contends that all of DLI's sales efforts and most its marketing were run through this domain instead of DLI channels at the insistence of Offord. *See id.*, ¶28-u. However, neither of these allegations are true nor supported by any evidence, and do not show how Plaintiff would be irreparably harmed in this instance.

Under the Independent Contractor Agreement (the "ICA"), Offord/NGN had specific authority and responsibility to actively manage the [cryptomining.tools](cryptomining.tools) website, apps and code base, among other assets, for DLI. *See* a copy of the Independent Contractor Agreement attached hereto as **Exhibit B**, Section 2. Offord, who was the only one managing the [cryptomining.tools](cryptomining.tools) domain for DLI since the acquisition, has direct and full knowledge of how this domain has been utilized by DLI before he was terminated on October 27, 2021. As Offord stated in his Affidavit, DLI has

never run through the cryptomining.tools domain the majority of its sales and marketing efforts. Exh. A, ¶12. Instead, the official tool DLI employees use to communicate with their customers is the distributedledgerinc.com email account, to which they still maintain access. *Id.*, ¶14.

Plaintiff fails to provide what irreparable harm it faces due to the lack of administrative control of the cryptomining.tools domain and the causal relationship between the two. DLI employees are still able to communicate with their customers, and any alleged harm through management—or mismanagement—of the subject website and domain has no bearing on any harm DLI allegedly suffers. It fails to meet its burden to show that injunctive relief is necessary here to prevent any imminent irreparable injury to DLI.

The second injunctive relief Plaintiff is seeking is to have Offord immediately transfer to DLI all emails and other communications received by the Offord.Me server to or from DLI following Offord's termination of the DLI employee's access to the cryptomining.tools domain and website. *See* Dkt. #9, ¶ b. The cryptomining.tools email account is not currently in use and has not been monitored by Offord since his termination. Exh. A, ¶15. To Offord's knowledge, emails have stopped being collected in the cryptomining.tools email inbox because DLI changed the mail server records of the domain name before the termination of the email inbox access was executed, which caused the cryptomining.tools G-Suite to stop receiving email. *Id.*, ¶16. The Cloudflare Audit Log of the cryptomining.tools domain from the date of Offord's termination shows that Josh Dunn of DLI made several changes to the cryptomining.tools domain. *See Id.*, ¶17; a copy of the October 28, 2021 Cloudflare Audit Log attached hereto as **Exhibit C**. Therefore, there has been no DLI email collected in the cryptomining.tools email account and Offord did not receive any of them through the Offord.Me server since his termination. Since there are nonexistent emails in the

5

domain, Plaintiff fails to show that any irreparable harm would occur if the nonexistent emails are not immediately transferred to DLI.

For the third injunctive relief, Plaintiff demands Offord to immediately transfer administrative control of the Telegram Groups to DLI. *See* Dkt. #9, ¶ c. However, Plaintiff fails to show that it will suffer any irreparable injury without the sought relief.

Plaintiff alleges that upon information and belief, other Telegram groups were created by NGN or Offord during his employment with DLI, but never disclosed to DLI, the actual owners of these Telegram groups. *See* Dkt. #1, ¶28-b. However, under the Asset Purchase Agreement (the "APA"), NGN only sold "multiple popular Telegram groups" to DLI. *See* a copy of the Asset Purchase Agreement attached hereto as **Exhibit D**, Section 1.1. No provision in the APA indicates that NGN was to sell all of its existent and future Telegram groups to DLI. Although the parties did not identify the specific Telegram groups that were involved in the asset acquisition, NGN did not intend—nor did the APA state—that all of NGN's Telegram groups, including the ones existing before the asset purchase transaction and those that might be created in the future, to be sold to DLI. It is impossible for the Court to grant this injunctive relief as the Telegrams groups are not identified in the TRO motion, the verified complaint or the actual APA.  In fact, the APA provides that NGN "will retain ownership of all [NGN] assets not specifically identified in Section 1.1." *See* Exh. D, Section 1.2. Thus, the new Telegram groups created by NGN or Offord following the asset acquisition do not belong to DLI, and the administrative control of them should not be transferred to DLI.

With respect to the Telegram groups that have already existed at the time of the asset acquisition and were potentially sold to DLI, Plaintiff fails to show that the absence of the administrative control of them would cause any irreparable harm to DLI. Plaintiff alleges that

access to the information of the Telegram Groups and control were and are essential to DLI's marketing efforts and sales leads. *See* Dkt. #1, ¶28-b. Offord added multiple DLI employees as administrators to these Telegram groups when he was managing the Telegram groups for DLI; therefore, DLI already has the information of these Telegram Groups. *See* Exh. A, ¶18. Contrary to Plaintiff's flawed assertion that control of these Telegram Groups is essential to DLI's marketing efforts and sales leads, DLI's Vice President of Operations stated to DLI's employees and shareholders that Telegram was not a business tool and should not be platform where DLI conducts its business. *See id.*, ¶19. At the insistence of DLI's Vice President of Operations, Offord added leads, prospects and customer contact information to DLI's customer relationship management ("CRM") software, Pipedrive. *See id.*, ¶20. All of DLI's customer information is in its CRM system and under the full control of DLI. *Id*. DLI has the ability to market and communicate freely with their prospective and existing customers. *Id*. The DLI employees are able to communicate effectively with DLI's prospective and existing customers via email, mail, telephone or Telegram chat groups, even without the administrative control of the Telegram Groups that NGN sold to DLI. Since Plaintiff fails to meet its burden to show any irreparable harm that is likely to occur due to the alleged lack of the administrative control of the Telegram Groups, it is not entitled to the third injunctive relief it is seeking.

**B.** **Plaintiff's request of injunctive reliefs (d) and (f) in the Motion must be denied because Plaintiff cannot show a substantial likelihood of success on the merits of its claims.**

Plaintiff's request of the injunctive relieves (d) and (f) in its Motion must be denied as Plaintiff cannot show a substantial likelihood of success on the merits of their correlated claims.

For its fourth injunctive relief sought, Plaintiff asks Defendants to cease using and to immediately return all Assets in defendants' possession or control. *See* Dkt. #9, ¶d. The term

"Assets" is defined in Plaintiff's Complaint as the assets sold by NGN to DLI under the APA, which allegedly consisted of the following:

1. "Crypto Mining Tools" ("CMT") brand;
2. Control of 20,000 subscriber blockchain mining email list and multiple popular Telegram groups;
3. [c]ryptomining.Tools website, apps and code base;
4. Crypto Mining Tools Podcast;
5. New Green Network LLC customer base, user list;
6. Business development and access to relationships with hardware and software vendors worldwide;
7. 50% ownership in a pending trademark for the phrase "Blockchain Mining" for use in advertisements, magazines, tradeshows, etc.; and
8. Miner sales business and PDU design and manufacturing relationships.

*See* Dkt. #1, ¶¶ 18-19.

The issues relating to the Telegram groups and the cryptomining.tools website have been previously addressed, where Plaintiff fails to show it would suffer irreparable injury if the Court does not issue a temporary restraining order for Offord to give the administrative control of the same to DLI now.

For the other assets listed above, Plaintiff mistakenly contends that Offord failed and refused to provide a comprehensive list of hardware and software vendors, suppliers, brokers and contact lists to DLI. *See* Dkt. #1, ¶28-e. Contrary to Plaintiff's disingenuous allegation, Offord never refused to provide the said list and NGN has provided to DLI comprehensive access to all hardware and software vendors, suppliers, brokers and contact lists at the time of the asset purchase transaction. Similarly, Plaintiff also mistakenly alleges that Offord failed and refused to provide the design discussions, drawings, and related material for PDU current and future designs to DLI. *See id.*, ¶28-g. The subject PDU documents and materials have been provided to DLI by NGN.

Other than making a conclusory allegation that Defendants are using DLI's assets (*see* Dkt. #1, ¶41), Plaintiff fails to present *any* facts to show that Offord, NGN, or Milwaukee SEO are

actually utilizing any of DLI's Assets referenced in Plaintiff's request of the fourth injunctive relief. Not only is Plaintiff not likely to succeed on the merits, the bare facts alleged by Plaintiff are unlikely to even withstand a Motion to Dismiss. For the above reasons, Plaintiff's request for the fourth injunctive relief must be denied.

For the fifth injunctive relief, Plaintiff asks Defendants to promptly stop using and to return all of DLI's proprietary, confidential information and trade secrets in defendants' possession or control, including without limitation all customer and vendor lists, records and files. *See* Dkt. #9, ¶ f. This injunctive relief is correlated with Count II of Plaintiff's Complaint, Violation of Alabama Trade Secrets Act (the "ATSA"). *See* Dkt. #1, Count II.

The ATSA defines a "trade secret" as follows:

A 'trade secret' is information that:
a. Is used or intended for use in a trade or business;
b. Is included or embodied in a formula, pattern, compilation, computer software, drawing, device, method, technique, or process;
c. Is not publicly known and is not generally known in the trade or business of the person asserting that it is a trade secret;
d. Cannot be readily ascertained or derived from publicly available information;
e. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy; and
f. Has significant economic value.

*Systrends, Inc. v. Group 8760, LLC*, 959 So. 2d 1052, 1065 (Ala. 2006), quoting § 8–27–2(1).

Plaintiff makes a generalized assertion that Offord, while he was working for DLI, was given access to "all aspects of the confidential and proprietary materials, information, systems, processes, customers and pricing." However, it cannot identify a single piece of trade secret of DLI's that was improperly disclosed or misappropriated by Offord. Moreover, Plaintiff fails to present any facts to show that the information that was available to Offord or the information allegedly misappropriated by Offord meets the definition of trade secrets under the ATSA. The party asserting the trade secret has the burden to show that it is included or embodied in the

categories listed in § 8–27–2(1)." *Public Systems, Inc. v. Towry,* 587 So.2d 969, 971 (Ala.1991). Threadbare recitals of the elements of "trade secret" supported by mere conclusory statements do not suffice. *See* Dkt. #1, ¶46, *Pugh v. Horace*, 2014 WL 912000, at *1 (S.D. Ala. Feb. 10, 2014).

In *Alagold Corporation v. Freeman,* 20 F.Supp.2d 1305, 1316 (M .D. Ala.1998), the court discussed what is required to establish a trade secret under Alabama law. The *Alagold* court held that the plaintiff did not satisfy its burden of establishing that the information at issue satisfied the requirements of a "trade secret" entitled to protection under the ATSA, where the plaintiff failed to establish that the information it sought to protect as trade secrets was subject to reasonable efforts to protect its secrecy while the defendant was employed by the plaintiff. *Id.* at 1315-16. As in *Alagold*, Plaintiff fails to allege any fact to show that the information allegedly misappropriated by Offord was protected by DLI as trade secret when Offord was providing services to DLI.

The ATSA provides for the recovery of "actual damages" suffered as a result of a "misappropriation" of a trade secret, as well as exemplary damages for willful and malicious misappropriation (§ 8–27–4); it describes "misappropriation" as follows:

> Misappropriation.
>
> A person who discloses or uses the trade secret of another, without a privilege to do so, is liable to the other for misappropriation of the trade secret if:
> (1) That person discovered the trade secret by improper means;
> (2) That person's disclosure or use constitutes a breach of confidence reposed in that person by the other;
> (3) That person learned the trade secret from a third person, and knew or should have known that (i) the information was a trade secret and (ii) that the trade secret had been appropriated under circumstances which violate the provisions of (1) or (2), above; or
> (4) That person learned the information and knew or should have known that it was a trade secret and that its disclosure was made to that person by mistake.

*Systrends, Inc.*, 959 So. 2d at 1065–66, quoting § 8–27–3.

Other than making unsupported and conclusory allegations that Offord willfully and maliciously misappropriated DLI's trade secrets, Plaintiff's Complaint is devoid of any facts to show Offord engaged in any enjoinable conduct that improperly disclosed or used any of DLI's trade secrets.

Plaintiff clearly fails to meet its burden to show a substantial likelihood of success on the merits of its Violation of Alabama Trade Secrets Act claim. It has not submitted any evidence that it actually has a trade secret or otherwise protectable information that was misappropriated by Offord. Therefore, the fifth injunctive relief in Plaintiff's Motion must be denied as well.

**C.    The other injunctive reliefs sought by Plaintiff in the Complaint must be denied.**

In Count IV of the Complaint, Plaintiff also makes several requests for a TRO, preliminary and permanent injunction against the Defendants. These requests for injunctive relief are not consistent with those in Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction. Other than the aforementioned five injunctive relieves, Plaintiff requested the Defendants to be enjoined or directed as follows:

- e. To immediately cease using, advertising or displaying the brand name cryptomining.tools;
- g. Promptly cease all involvement with the upcoming trade conference scheduled for February, 2022 including, without limitation, acceptance of registration or other funds from potential registrants;
- h. Promptly return to DLI all funds received in connection with the upcoming trade conference and provide a full accounting of all registrants and funds received and expended;
- i. Refrain from any disparagement of DLI, its employees, equipment, sales channels or any other aspect of the company; and
- j. Immediately turn over to DLI all books and records of DLI, all Assets sold by NGN/Offord to DLI by that Asset Purchase Agreement dated Dec. 3, 2020, and all related and subsidiary companies presently in their possession.

*See* Dkt. #1, ¶56.

With respect to ¶56-e, as alleged by Plaintiff, NGN was at all times operated under the brand name cryptomining.tools. *See id.*, ¶15. Under the APA, NGN only sold "Crypto Mining Tools brand" to DLI, not the brand name cryptomining.tools. *See* Exh.D, Section 1.1. Therefore, Plaintiff is not entitled to any injunctive relief in the first place that would enjoin Defendants from using the brand name cryptomining.tools.

As to ¶¶56-g and h, Plaintiff alleges that Offord instructed participants in an upcoming crypto mining conference sponsored by DLI to pay the registration fees to Milwaukee SEO's bank account. *See* Dkt. #1, ¶28-a. Offord affirmatively denies this manifestly groundless allegation. In addition, the potential injury involved here is the loss of registration fees or other funds paid by the registrants of the conference, which can readily be redressed by monetary remedies. Plaintiff fails to show it is facing a substantial threat of imminent irreparable injury due to Offord's involved in the conference that entitles it to the protection of a temporary restraining order or preliminary injunction.

¶56-i requests Defendants to refrain from any disparagement of DLI, which presumably is correlated with Count III of Plaintiff's Complaint, Defamation. *See* Dkt. #1, Count III. Plaintiff's sole allegation to show defamation is that upon information and belief, Offord communicated to DLI customers, vendors and others in the Crypto Industry that DLI's new sale channels were "fake." *See id.*, ¶53. This is a mere conclusory and unsubstantiated statement that cannot suffice to prove a claim of defamation. *See Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013) (refusing to take as true the plaintiff's allegations "upon information and belief" that the supply of pentobarbital possessed by the defendant is either expired, illegally obtained, or compounded pentobarbital); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 551 (2007) (declining to take as true the conclusory allegation "upon information and belief" that the companies had entered

a conspiracy without enough facts to make that statement plausible). Further, no fact or evidence is alleged to establish that DLI is facing the threat of irreparable harm due to any of Offord's statements to others. Plaintiff has failed to provide a substantial showing of the need for the injunctive relief to issue. In order to satisfy the irreparable injury requirement, Plaintiff must show that the threat of injury is "neither remote nor speculative, but actual and imminent." *Northeastern Fla. Chapter of Ass'n of General Contractors of Am.,* 896 F.2d at 1285. Plaintiff's conclusory allegation of irreparable harm is purely speculative. *See* Dkt. #1, ¶54.

¶56-j asks the Court to issue a temporary restraining order that would force Defendant to immediately return all books and records of DLI and all related and subsidiary companies. Once again, Plaintiff fails to allege *any* facts to show that Defendants are in possession of any of the subject books and records. More importantly, there is no indication that if Defendants do not immediately turn over the requested documents allegedly in their possession, Plaintiff would incur an irreparable injury. Plaintiff fails to show an immediate injunctive relief is necessary.

## V.   CONCLUSION

Plaintiff's submissions to the Court are so totally devoid of any actual, factual evidence that it is inescapably clear that Plaintiff cannot be granted a temporary restraining order ("TRO") or any other injunctive relief against the Defendants.

Respectfully Submitted:

*/s/Caroline T. Pryor*
CAROLINE T. PRYOR (PRYOC 2802)
SARAH CROSS RYAN (CROSS5186)
Attorneys for Defendants, New Green Network LLC,
Milwaukee SEO LLC and Scott Offord

**OF COUNSEL:**

CARR, ALLISON
6251 Monroe Street, Suite 200
Daphne, Alabama 36526
(251) 626-9340
(251) 626-8928 - Facsimile
cpryor@carrallison.com
sryan@carrallison.com

## CERTIFICATE OF SERVICE

I do hereby certify that I have on this 10th day of December, 2021, electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following and that I hereby certify that I have mailed by placing a copy of same in the United States Mail, first-class postage prepaid and properly addressed to those non CM/ECF participants:

Dennis D. Green, Jr.
Law Office of Dennis D. Green, Jr., P.C.
P.O. Box 132741
Spring, TX 77393

R. Joshua Koch, Jr.
Koch & Schmidt, LLC
650 Poydras Street, Suite 2660
New Orleans, LA 70130

*/s/Caroline T. Pryor*
OF COUNSEL