IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **DISTRIBUTED LEDGER, INC** ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | CASE NO.: 1:21-cv-490 |
| ) | |
| **NEW GREEN NETWORK LLC,** ) | |
| **MILWAUKEE SEO LLC, and SCOTT** ) | |
| **OFFORD** ) | |
| ) | |
| Defendants. ) | |

**DECLARATION OF SCOTT OFFORD**

I, Scott Offord, over the age of 21, being first duly sworn on my oath, do depose and state as follows:

1. At all times relevant, I am the founder and sole member of New Green Network, LLC ("NGN") and Milwaukee SEO, LLC ("Milwaukee SEO"). NGN and Milwaukee SEO provide sales and services to the crypto industry.

2. At no time had NGN ever faced a potential bankruptcy.

3. On December 1, 2020, NGN entered into an Asset Purchase Agreement with Distributed Ledger, Inc. (DLI) and sold certain assets of NGN to DLI which include the following:

- Crypto Mining Tools brand;
- 20,000 subscriber blockchain mining email list and multiple popular Telegram groups;
- cryptomining.tools website, apps and code base;
- Crypto Mining Tools Podcast;
- New Green Network LLC customer base;
- Access to relationships with hardware and software vendors worldwide;
- 50% ownership in a pending trademark for the phrase "Blockchain Mining" for use in magazines, tradeshows;
- Sponsorship, exhibit booths and tickets to two major 2021 bitcoin/blockchain conferences; and
- PDU design and manufacturer relationships.

EXHIBIT A

*See* **Exhibit D** of Defendants' Response in Opposition to Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction, Section 1.1.

4. Pursuant to the Asset Purchase Agreement, NGN retained ownership of all NGN assets that are not specifically identified in Section 1.1 of the Asset Purchase Agreement. *See id.*, Section 1.2.

5. NGN was to be the shareholder of DLI. However, neither a Class A Common Stock Purchase Agreement nor a Class B Common Stock Purchase Agreement was ever signed by DLI and NGN.

6. On December 1, 2020, NGN and DLI also entered into an Independent Contractor Agreement for NGN to provide certain services to DLI. Under the Independent Contractor Agreement, NGN had specific authority and responsibility to actively manage the following assets of DLI:

- Crypto Mining Tools brand;
- 20,000 subscriber blockchain mining email list and multiple popular Telegram groups;
- cryptomining.tools website, apps and code base;
- Crypto Mining Tools Podcast;
- New Green Network LLC customer base;
- Business development and access to relationships with hardware and software vendors worldwide;
- 50% ownership in a pending trademark for the phrase "Blockchain Mining" for use in magazines, tradeshows; and
- PDU design and manufacturer relationships.

*See* **Exhibit B** of Defendants' Response in Opposition to Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction, Section 2.

7. Offord performed the work on behalf of NGN under the Independent Contractor Agreement as the Asset Management Director of DLI. It was NGN's responsibility to manage and administer the cryptomining.tools domain and website. However, for convenience sake, Offord had granted Josh Dunn of DLI full administrative access to his personal Cloudflare

account that contained all of Offord's personal domain names. Josh Dunn, redirected multiple domain names that did not belong to him, resulting in disruption of service to Offord's personal website projects. Offord was directed by James Andersen to move code repositories from Offord's personal Github account into DLI's corporate account. Upon successful migration of the code, James Andersen proceeded to revoke Offord's access and ability to view and contribute to the cryptomining.tools website and apps.

8. DLI did not provide the necessary tools Offord/NGN needed to successfully performed its work as an independent contractor of DLI. For example, Offord was routinely removed by James Andersen from important customer communications and was forbidden to provide input on certain customer accounts and large prospective investors and future company partners. Upon successful migration of the cryptomining.tools code base from Offord's personal Github repository, James Andersen proceeded to revoke Offord's access and ability to view and contribute to the cryptomining.tools website and apps that NGN was supposed to actively manage under the Independent Contractor Agreement. Offord's ability to actively manage the Crypto Mining Tools assets was revoked by James Andersen.

9. Offord was never responsible for overseeing or directing the sales and marketing on behalf of DLI and has never required or forced DLI employees to use a cryptomining.tools email address for the sales and marketing of DLI's products and services. DLI had a designated Marketing Manager, Josh Dunn, when Offord was working for DLI.

10. On October 27, 2021, the CEO of DLI sent a text message to Offord, stating that "You are no longer a contractor for DLI."

11. Offord/NGN was not terminated by DLI for cause. Under the Independent Contractor Agreement, any discharge claimed for Cause shall be so stated in the notice thereof. *See* Exh. B, Section 6(c). Offord/DLI never received a notice stating that the termination was for cause.

12. DLI has never run majority of its sales and marketing efforts through the cryptomining.tools domain.

13. Offord never required DLI employees or contractors to use his personal server at offord.me, nor did he ever require them to use a cryptomining.tools email address.

14. The official tool DLI employees uses to communicate with their customers is the distributedledgerinc.com email account.

15. The cryptomining.tools email account is not currently in use and has not been monitored by Offord since his termination.

16. Emails have stopped being collected in the cryptomining.tools email inbox because DLI changed the mail server records of the domain name before the termination of the email inbox access was executed, which caused the cryptomining.tools G-Suite to stop receiving email.

17. The Cloudflare Audit Log of the cryptomining.tools domain from the date of Offord's termination shows that Josh Dunn of DLI made the following changes of the cryptomining.tools domain:

- Deleted the A Records of cryptominingconference.com
  Changed the CNAME Records of cryptominingconference.com to point to distributedledgerinc.com
- Changed the MX Records of cryptominingconference.com to distributedledgerinc-com.mail.protection.outlook.com
  Deleted the A Records of cryptomining.tools
  Deleted the MX Records of cryptomining.tools
- Changed the MX Records of cryptomining.tools to distributedledgerinc-com.mail.protection.outlook.com
- Changed the CNAME Records of cryptomining.tools to point to distributedledgerinc.com
  Deleted the A Records of miningfarmpdu.com

> Changed the CNAME Records of miningfarmpdu.com to point to distributedledgerinc.com
- Changed the MX records of miningfarmpdu.com to distributedledgerinc-com.mail.protection.outlook.com

*See* a copy of the October 28, 2021 Cloudflare Audit Log of the cryptomining.tools domain attached to the Response to the Motion as Exhibit X.

18. Offord added multiple DLI employees/contractors as administrators to the Telegram groups NGN sold to DLI.

19. DLI's Vice President of Operations stated to DLI's employees and shareholders that Telegram was not business tool and should not be flat form where DLI conducts its business.

20. At the insistence of DLI's Vice President of Operations, Offord added leads, prospects and customers contact information to DLI's customer relationship management ("CRM") software, Pipedrive. All DLI's customer information is in its CRM system and under the full control of DLI. DLI has the ability to market and communicate freely with their prospective and existing customers.

21. Offord did not convert the G-suite, marketing mailer apps, mailing lists, signup forms, etc. of the cryptomining.tools  domain to his own use and benefit.

22. DLI took down the contents of the cryptomining.tools website. DLI forwarded the cryptomining.tools domain name to its corporate website. The cryptomining.tools email account is not currently processing any inbox or outbound email.

23. NGN provided an export spreadsheet/list of all its customers to DLI before the sale of the assets took place. Offord did not refuse to provide such information to DLI. NGN provided its customer spreadsheet/list to jandersen@distributedledgerinc.com, mfrancis@wavefly.com, and dgreen@wavefly.com on December 2, 2020, including: FreshBooks - Invoice Details 2020,

8. V.

FreshBooks - Revenue by Client 2020, invoice_details, and revenue_by_client. *See* the December 2, 2020 email correspondence attached hereto as **Exhibit 1**.

24. NGN provided to DLI the comprehensive access to all its hardware and software vendors, suppliers, brokers and contact lists. Offord did not refuse to provide such information to DLI. DLI's access to and relationship with vendors worldwide has remained intact.

25. NGN rightly owned half of a pending trademark "Blockchain Mining." NGN requested DLI's general counsel to assist with transferring the 50% ownership of the trademark to DLI.

26. NGN provided the design discussions, drawings, and related material for PDU current and future designs to DLI.

27. Offord did not direct DLI employees/contractors to undertake duties and assignments outside their scope of employment for his personal benefit. Offord never demanded DLI employees/contractors to perform tasks within his duties. Offord never directed DLI employees/contractors to take notes for him. Offord never requested DLI employees/contractors to summarize videos and meetings.

28. Offord did not ship to a customer of DLI 28 more units than paid for by the customer.

29. Offord did not interfere with DLI's potential contracts with customers or vendors.

30. The CEO of DLI attempted to enter into a contract with the vendor, Bitmain, outside of Offord's purview. The CEO of DLI contacted Bitmain and requested a contract for an order of 1,000 miners per month for 12 months, *i.e.* a total of 12000 miners, which would have resulted in an invoice of approximately $100 million due to Bitmain by DLI. DLI was also unable to pay the required deposit of 35% of the total contract value to Bitmain in a timely fashion. After Bitmain had sent the CEO a contract and before the CEO of DLI could sign the agreement and raise funds

to pay the deposit, Bitmain ran out of inventory and no longer had any goods available to fulfill the order for DLI.

31. Offord did not use DLI time to sell NGN's own equipment.

32. Offord did not use company time, channels, and resources acquired from NGN to market and sell equipment through Milwaukee SEO, in competition with and to the detriment of DLI with the intention of creating a back fall of revenue for personal gain.

33. Offord did not trespass on the property of DLI, threatened DLI employees, steal or unlawfully remove any property belonging to DLI. DLI is currently holding hostage approximately $200,000 worth of Offord and Milwaukee SEO's personal property, which is preventing Offord from earning a living. Offord's attorney has previously sent DLI a letter to request his personal property.

34. The warehouse DLI is currently leasing used to be a warehouse leased by Milwaukee SEO. Milwaukee SEO had installed video and audio recording equipment in the warehouse at a time when it was renting the warehouse. The video cameras were not installed for the purpose of secretly recording DLI employees/contractors and using the recordings against them. The cameras were installed for the purpose of monitoring valuable equipment that was stored in or passing through the warehouse to protect against theft from outsiders. The cameras were located in obvious and conspicuous locations and all DLI employees/contractors were aware of the existence of the cameras.

35. NGN acted within its authority when executing contracts on behalf of DLI with Bitmain for equipment and training operations. At no time did DLI ever lose any money due to NGN's execution of those contracts.

36. Offord never charged excessive and inappropriate expenses to his corporate credit card.

37. Offord never transferred DLI's mining PDUs to a personal friend of him.

38. Offord did not instruct clients of DLI to send payment for the purchase of miners from DLI to the bank account of Milwaukee SEO rather than DLI.

39. Offord did not instruct any participants in a forthcoming crypto mining conference sponsored by DLI to pay their registration fees to the bank account of Milwaukee SEO.

Dec 10, 2021
DATE

_____
SCOTT OFFORD

8. V.

---------- Forwarded message ---------
From: **Scott Offord** <scott@cryptomining.tools>
Date: Wed, Dec 2, 2020 at 1:03 PM
Subject: Re: Asset Purchase - NGN invoice details and revenue by client 2020 so far
To: Jim Andersen <jandersen@distributedledgerinc.com>
Cc: Mike Francis <mfrancis@wavefly.com>, Dennis Green <dgreen@wavefly.com>

NGN invoice details and revenue by client 2020 so far.

EXHIBIT 1