IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DISTRIBUTED LEDGER, INC. * | |
| * | |
| Plaintiff, * | |
| v. * | CASE NO.:   1:21-cv-490 |
| * | |
| NEW GREEN NETWORK LLC, * | |
| MILWAUKEE SEO LLC, and SCOTT * | |
| OFFORD * | |
| * | |
| Defendants. * | |

**REPORT OF PARTIES' PLANNING MEETING**

Pursuant to the Federal Rules of Civil Procedure 26(f), a meeting was held on February 2, 2022, via zoom video conference and was attended by:

- for the Plaintiff,
  Josh Koch, Dennis Green

- for the Defendant.
  Gary Zhao, Joe Carlasare, Caroline Pryor

**Plaintiff's brief narrative statement of the facts and causes of action:**

Distributed Ledger, Inc ("DLI") is an Alabama company in the business of selling and servicing equipment used in the mining of cryptocurrency. In or around early December, 2020, Plaintiff purchased from defendant, New Green Network, LLC ("NGN"), the majority, if not all, of its assets including, without limitation, the brand, domain, website, apps and code base for "cryptomining.tools". DLI also acquired NGN's customer base, user list and multiple Telegram groups/channels. These acquisitions were made pursuant to and Asset Purchase Agreement. In consideration of this acquisition DLI paid NGN 1 million shares of DLI stock (500,000 voting, 500,000 non-voting).

Following the sale of its assets, NGN was hired by DLI as its Asset Management Director over the recently acquired assets, which title and position was assumed by NGN's sole member and owner, Scott Offord. The hiring of NGN was pursuant to an Independent Contractor Agreement. Subsequent to its acquisition of the Assets and appointment of Offord as the Asset Management Director, DLI became aware of certain actions by Offord which were causing damage and irreparable harm to DLI.

**1. Breach of Asset Purchase Agreement.**

Subsequent to confection of the Asset Purchase Agreement, DLI transferred its stock to NGN. In connection with this transfer, DLI also forwarded to NGN Class A and B shareholder agreements for its execution. Offord thereafter replied that the shareholder agreements should be in the name of Milwaukee SEO. The shareholder agreements were amended and returned to Offord. DLI has since learned that the shareholder agreements were never executed and that Offord does not believe that he, NGN or Milwaukee SEO are bound to any terms of the shareholder agreements which contain, among other restrictions, a non-compete in favor of DLI.

DLI has also since discovered that despite its payment of stock for the assets of NGN, Offord has failed and refused to turn over to DLI the assets it believed it had acquired and paid for from NGN. DLI will shortly amending its Complaint to add a count for rescission of this sale and/or to nullify the Asset Purchase Agreement.

**2. Breach of Independent Contractor Agreement**.

In addition to failing to transfer to DLI the assets it paid for, Offord also:

a) Routinely exceeded his authority, directing other employees to undertake duties and assignments outside their scope of employment for his personal benefit. These ultra vires acts resulted in a hostile work environment for the company's employees.

b) In violation of company policy, shipped to a customer of DLI, 28 more units than paid for by the customer at a loss to DLI in excess of $150,000. On information and belief, these extra units were shipped to provide goodwill to Offord for his personal business.

c) Intentionally interfered with DLI's potential contracts with vendors, including without limitation, Bitmain, its largest vendor. As a result of his actions and interference, DLI was unable to timely confect a contract with Bitmain resulting in a significant loss to DLI.

d) Used DLI time, channels, and resources acquired from NGN to sell his/NGN equipment without prior authorization, notification to or coordination from DLI.

e) Used company time, channels, and resources acquired from NGN to market and sell equipment through another of his companies, Milwaukee SEO, LLC, in competition with and to the detriment of DLI with the intention of creating a back fall of revenue for personal gain.

f) Installed video and audio recording equipment to secretly record employees and customers of DLI without their knowledge or consent in violation of Wisconsin law.

g) Charged excessive and inappropriate expenses to his corporate credit card.

h) Transferred mining PDU's belonging to DLI to a personal friend without authorization or approval.

i) Instructed clients of DLI to send payment for the purchase of miners from DLI to the bank account of Milwaukee SEO, LLC rather than DLI.

j) Instructed attendees of DLI sponsored training coursed to send their application fees to his personal bank account and refused to provide an accounting of these funds to DLI.

k) Used DLI company miners and DLI electricity to operate the miners to produce crypto currency for his personal account. Instructed DLI employees working for him to do the same. They refused.

l) Contacted a DLI vendor and instructed them to "redirect" certain equipment ordered by DLI to himself for one of his personal customers.

m) Instructed clients of DLI to send payment for the purchase of miners from DLI to the bank account of Milwaukee SEO, LLC rather than DLI.

n) Disparaged DLI and its employees to others in direct breach of the non-disparagement provision of the contract.

OFFORD WAS TERMINATED FOR CAUSE ON OCTOBER 27, 2021.

### 3. Trespass and damage.

Offord, on or about October 29, 2021, raided DLI's warehouse with two to three other men. Offord proceeded to remove equipment he claimed as his, as well as equipment belonging to DLI and a DLI equipment. In addition, Offord or of his accomplices vandalized equipment in the warehouse, disabled several pieces of equipment, removed the keys to certain pieces of equipment, and disconnected much of DLI's operating equipment, shutting the facilities operations down for several days.

### 4. Fraud.

Offord, in early January, 2022, directed Navier to ship to him 34 miners that had previously been sent by DLI to Navier to host. These miners clearly belonged to DLI and Offord had no claim to them, a fact he has not denied. The replacement cost of these miners was in excess of $300,000. These miners were ultimately returned by Offord to DLI following its notice to him that they had discovered this theft/fraud.

Following his termination, Offord, through his then counsel, forwarded a list of equipment which he claimed to own to DLI. Months later, Offord had his present counsel resend the original equipment list but to also for the first time assert a claim for an additional 28 miners. When told that these miners were not in DLI's possession, Offord, without explanation, submitted a new demand for 9-10 old miners. No explanation was ever given for his earlier demand.

Offord has also made demand for a "pallet of miners", providing a video clip of the pallet. Again DLI confirmed that these miners were not in its possession and were believed to have been removed during his earlier raid on the warehouse. Offord has refused requests for the serial numbers of these miners and for information explaining when and where the video was made.

Offord, on information and belief, never intended to comply with his obligations or covenants under the Independent Sales Agreement. Rather he, at all times material, intended to use his position as Asset Management Director to divert the company assets and resources to his own use and benefit, including maintaining control of the Assets sold by him to DLI which all times relied on his good faith to their detriment. Offord's actions were made maliciously and with an intent to deceive DLI as a result of which DLI was caused damage as a proximate consequence.

**5. Defamation:**

Offord, before and following his termination from DLI, falsely communicated to DLI customers, vendors and others in the Crypto Industry that DLI's new sale channels were "fake" as well as other allegations designed solely to harm DLI for his own benefit. These include, but are not limited to postings suggesting that DLI had stolen miners which are believed never to have existed, posting of a letter written presumably at his request by his current counsel falsely representing that DLI had continued the hearing on its preliminary injunction when it became obvious it had no merit. As Mr. Offord's counsel was aware and agreed to, the hearing was continued because it became apparent to DLI's counsel that some formal discovery under oath would be necessary before proceeding with the hearing.

**6. Irreparable Harm.**

Those acts by Mr. Offord giving rise to the <u>irreparable harm</u> include, among others: (1) maliciously terminating DLI employees access to the "cryptomining.tools.com domain and restricting DLI access to the Telegram channels, both of which were DLI's primary tools for communicating with its vendors and customers; (2) hijacking the cryptomining.tools brand and domain for his personal use and to the detriment of DLI; (3) refusing to release the customer and user lists acquired by DLI and believed to be using them for his own marketing purpose; and, (4) using proprietary information from DLI, including pricing, processes, customer and vendor information, in direct breach of NGN' contractual covenant not to "make or cause to be made any unauthorized disclosure of other use of confidential information regarding the corporation or any of its activities."

Mr. Offord is also in direct breach of the non-compete provision contained in the DLI shareholder agreements.

In view of these actions by defendants, a temporary restraining order or, in the alternative, a preliminary injunction is reasonable and necessary to protect DLI's legitimate business interests and shield it from the irreparable harm it would suffer from the widespread loss of customers, vendors and good will.

**Defendant's Narrative Statement of the Facts:**

Defendant New Green Network LLC ("NGN") was a Wisconsin limited liability company that engaged in the business of providing sales and services to the crypto industry. NGN was 100% owned by Defendant Milwaukee SEO LLC ("Milwaukee SEO"), which is also a Wisconsin limited liability company. Defendant Scott Offord ("Offord") is the founder and sole member of Milwaukee SEO. In the past couple of years, Offord has built up a good reputation and business network in the crypto industry, especially in the area of Wisconsin, through great efforts and diligence.

On December 1, 2020, NGN and Plaintiff Distributed Ledger, Inc. ("DLI") entered into an Asset Purchase Agreement under which DLI would purchase some of NGN's assets (the "Purchased Assets") relating to the crypto mining business by transferring its 500, 000 Class A

shares and 500,000 Class B shares to NGN. NGN transferred the Purchased Assets to DLI after the Asset Purchase Agreement was executed by both sides. However, as of the filing of this report, Offord and NGN still have not received any shares of DLI's stock as the consideration in exchange for the Purchased Assets. DLI never truly intended to comply with its obligations and covenants under the Asset Purchase Agreement. DLI's actions were made maliciously and with an intent to induce Offord/NGN to enter into the Asset Purchase Agreement.

On December 1, 2020, NGN and DLI also entered into an Independent Contractor Agreement for NGN to actively manage the assets DLI purchased from NGN. Offord performed work on behalf of NGN under the Independent Contractor Agreement as the Asset Management Director of DLI, until October 28, 2021, when the CEO of DLI wrongfully terminated Offord/NGN through a personal text message to Offord, without cause.

DLI brings this lawsuit claiming that Offord and NGN committed a fraud when NGN entered into the Independent Contractor Agreement with DLI. Offord and NGN breached their contractual obligations and duties under the Independent Contractor Agreement when Offord/NGN was working for DLI. In addition, DLI alleges that the Defendants misappropriated its trade secrets that Offord had access to and that Offord disparaged DLI's business after he was terminated by DLI. However, DLI's Complaint is completely devoid of facts to support its claims, which cannot survive a Rule 12(b)(6) Motion to Dismiss if DLI does not amend the allegations to meet its burden of pleading. Assuming that DLI can state a cause of action upon which relief can be granted in its amended complaint, Offord denies all material allegations against him and intends to assert affirmative defenses to Plaintiff's Amended Complaint.

When NGN and DLI signed the Independent Contractor Agreement, Offord was misled by DLI about the human and financial resources it would provide to him to perform the work as an independent contractor and as its shareholder within 1 million shares. Moreover, there are significant misrepresentations about the integrity of DLI's business operations and its financial health, which Offord only learned after NGN becoming a shareholder of DLI. Furthermore, since its wrongful termination of Offord/NGN, DLI has disparaged Offord and his business by making multiple misleading and disingenuous statements to third parties in the crypto industry. When it is time to bring compulsory counterclaims in this suit, and depending what is alleged in Plaintiff's amended complaint, Defendants reserves the right to assert breach of contract, tortious interference, fraud, and other potential claims against DLI.

2. Plaintiff:  Plaintiff believes this jury action should be ready for trial by the summer of 2023.

   Defendants: This jury action should be ready for trial by ____premature at this time_____. At this time, the trial is expected to take approximately __premature at this time__ excluding jury selection.

3. The Parties request a pretrial conference in _____premature at this time_____.

4. Discovery Plan.  The Parties jointly propose to the Court the following discovery plan:

Discovery will be needed on the following subjects:

**Plaintiff**: At this time plaintiff believes that discovery will be needed on, among other issues: the Asset Purchase Agreement; the Independent Contractor Agreement; the Shareholder Agreements; communications between the parties related to performance of these contracts; defendant Offord's trespass and resulting damages of the DLI warehouse; defendant Offord's claims to miners; defamation/disparaging statements/postings by defendant Offord; defendant Offord's refusal to transfer to DLI's the assets it paid for; defendant Offord's conversion of funds owed to DLI; relationship and status of NGN; Milwaukee SEO and Mr. Offord; theft of DLI miners from Navier; breach of non-compete; defendant Offord use of DLI confidential and proprietary information; Bitmain; defendant use of DLI miners for his personal gain; defendant Offord involvement in Crypto training courses/conferences; defendant Offord installation of microphones and use of audio recordings; prior claims against defendant Offord for defamation/fraud; factual basis for representations in counsel's letter posted by defendant Offord.

**Defendants**: Plaintiff has indicated that it will amend the complaint by March 3, 2022. It appears from the rule 26 conference that the amendment will be significantly different from the complaint currently pending before the court. Defendants cannot forecast the subject(s) of upcoming discovery or length of such discovery without reviewing the amended complaint. Defendants propose that they will respond to the complaint by April 4, 2022. Defendants propose that another rule 26 conference be held shortly after April 4, 2022 so the parties can meaningfully revisit the discovery issues and a scheduling plan. Defendants request a scheduling conference be set at the Court's convenience.

5.  Initial Disclosures. The parties will exchange by _____premature_____, the information required by Federal Rules of Civil Procedure 26(a)(1).

6.  The Parties request until ___April 4, 2022_____, to join additional parties and amend the pleadings.

7.  Reports from retained experts under Rule 26(a)(2) due:

    •   From the Plaintiff by _____Premature_____
    •   From the Defendant by _____Premature_____

8.  Pretrial Disclosures. Final lists of witnesses and exhibits under Rule 26(a)(3) due by _____Premature_____.

9. Discovery Limits.

   **Plaintiff:**

   Plaintiff believes that a maximum of 30 interrogatories by each party to another party. Any party requiring additional interrogatories may approach the court and request additional interrogatories for good cause. Responses due within 30 days subject to extensions by agreement of the parties or order of the court.

   Plaintiff believes a maximum of 10 deposition per party, each deposition limited to 7 hours unless extended by agreement of the parties or further order of the court.

   Plaintiff believes that a maximum of 20 request for admission by any party to the other. Responses due within 30 days of service subject to extension by agreement of the parties or order of the court.

   Maximum of 45 request for production by each party to another party. Responses due within 30 days of service subject to extension by agreement of the parties or order of the court.

   Defendants:

   Defendants believe it is premature at this time to set discovery limits without being able to consider the allegations of Plaintiff's amended complaint.

10. All potential dispositive motions to be filed by_____Premature_____.

11. Plaintiff/Settlement:

    Plaintiff agrees that settlement is a possibility but it is premature to confidently predict whether or not it will occur. Plaintiff is open to another settlement conference with the magistrate but is also open to private mediation.

    Defendants/Settlement:

    Settlement is a possibility but cannot be evaluated fully prior to the close of discovery. The parties would like to reserve the right to select their own mediator should they decide that mediation is a possibility.

12. Discovery in this action will include electronically stored information. The parties plan to produce electronically stored information __premature_____. Each party will bear its own costs associated with the production of and viewing of ESI.

13. Other matters:

Dated: February 4, 2022

                Respectfully submitted,

**DISTRIBUTED LEDGER, INC.**

By It's Counsel
/s/ Dennis D. Green, Jr.
Dennis D. Green, Jr.
Alabama Bar No. 7616-U22C
LAW OFFICE OF DENNIS D. GREEN, JR., P.C.
132741 P.O. Box
Spring, Texas 77393
(470) 774-1288
dennis@lawofficeofdennisgreen.com

/s/ R. Joshua Koch, Jr.
R. Joshua Koch, Jr.
Louisiana Bar NO. 007767
KOCH & SCHMIDT, LLC
650 Pydras St., Suite 2660
New Orleans, Louisiana 70130
(504) 208-9042
jkoch@kochschmidt.com

**NEW GREEN NETWORK LLC
and SCOTT OFFORD**
By It's Counsel
/s/ Gary Zhao
Gary Zhao
Joseph P. Carlasare
SMITHAMUNDSEN LLC
150 M. Michigan Avenue, Suite 3300
Chicago, IL 60601
(312) 894-3200
gzhao@salawus.com
jcarlasare@salaws.com

/s/ Caroline T. Pryor
Caroline T. Pryor (PRYOC 2802)
CARR ALLISON
6251 Monroe Street, Suite 200
Daphne, Alabama 36526
(251) 626-9340
cpryor@carrallison.com