**ASSET PURCHASE AGREEMENT**

by and among

**DISTRIBUTED LEDGER, INC.**

as the Buyer,

and

**NEW GREEN NETWORK, LLC**

as the Seller,

EXHIBIT 1

## ASSET PURCHASE AGREEMENT

**THIS ASSET PURCHASE AGREEMENT** (the "**Agreement**"), dated as of December 1, 2020 (the "**Effective Date**") is entered into by and among **DISTRIBUTED LEDGER, INC.**, a Texas corporation (the "**Buyer**"), and **NEW GREEN NETWORK, LLC**, a Wisconsin limited liability company[1] (the "**Seller**"). The Buyer and Seller are hereby collectively referred to as the "**Parties**," or singularly as a "**Party**."

## RECITALS

**WHEREAS,** the Parties have determined that it is in their best interests for the Seller to sell to the Buyer and for the Buyer to buy from the Seller (a) all of the assets detailed in *Section 1.1* of this Agreement (collectively , the "**Assets**") on the terms and conditions contained in this Agreement (the "**Acquisition**"); and

**WHEREAS**, the Parties hereto desire to make certain representations, warranties, covenants, and agreements in connection with the Acquisition.

**NOW THEREFORE**, in consideration of the mutual representations, warranties, covenants, and agreements set forth herein, the Seller and the Buyer agree as follows:

## ARTICLE I
## PURCHASE AND SALE OF ASSETS

**1.1    Purchase and Sale of Assets**

Upon the terms and subject to the conditions contained in this Agreement, at the Closing (hereinafter defined), the Seller shall sell, assign, transfer, and convey to the Buyer, and the Buyer shall purchase, acquire, and accept from the Seller all of the assets of the Seller used in the Business, including without limitation, those listed below, free and clear of all Liens except Permitted Liens (hereinafter defined) (collectively the "**Purchased Assets**"):

- Crypto Mining Tools brand
- 20,000 subscriber blockchain mining email list and multiple popular Telegram groups
- cryptomining.tools website, apps and code base
- Crypto Mining Tools Podcast
- New Green Network LLC customer base
- Access to relationships with hardware and software vendors worldwide
- 50% ownership in a pending trademark for the phrase "Blockchain Mining" for use in magazines, tradeshows
- Sponsorship, exhibit booths and tickets to two major 2021 bitcoin/blockchain conferences
- PDU design and manufacturer relationship

**1.2    Retained Assets**

The Seller will retain ownership of all Seller assets not specifically identified in Section 1.1 (collectively, the "**Retained Assets**")

1.3     **Purchase Price**

The purchase price for the Purchased Assets shall be in the form of shares of Buyer's stock, in the following amounts: 500,000 Class B shares (pending a 90-day vestment period during reconciliation of the Business) and 500,000 Class A shares (the "**Purchase Price**").

1.4     **Time and Place of Closing**

Subject to the term and provisions of this Agreement, including Article 7 of this Agreement, the closing of the transactions described in this Article I (the "**Closing**") shall be by electronic mail and overnight courier service, or by physical exchange of documentation at the offices of Law Office of Dennis D. Green, Jr., P.C., 5223 Pointe Spring Xing, Spring, TX 77389, on or about December 1, 2020 or at such other place or time as the Parties may agree. The date upon which the Closing actually occurs is hereinafter referred to as the "**Closing Date**." The Closing shall be effective as of 11:59 p.m. Eastern Time on the Closing Date.

ARTICLE II
REPRESENTATIONS OF THE SELLER

In order to induce the Buyer to enter into this Agreement, the Seller hereby makes the representations and warranties set forth below, which are true, correct and complete on the date hereof (unless specified in such representation or warranty to be true, correct, and complete only as of the Closing) and shall be true, correct, and complete as of the Closing. The Seller has delivered to the Buyer the Disclosure Schedule on the date hereof. Except as set forth in those sections of the Disclosure Schedule corresponding to the sections below:

2.1     **Execution and Delivery**

The execution, delivery, and performance of this Agreement and any related agreements by the Seller and the consummation of the transactions contemplated hereby and thereby, have been duly authorized and approved by the Seller, and no other action on the part of the Seller is necessary to authorize the execution, delivery, and performance of this Agreement and any related agreements by the Seller and the consummation of the transactions contemplated hereby and thereby. This Agreement has been duly and validly executed and delivered by the Seller and constitutes the legal, valid, and binding obligations of the Seller, enforceable against the Seller in accordance with their terms, assuming valid execution and delivery of this Agreement and the Related Agreements by the Buyer, and except as enforceability may be limited by bankruptcy, insolvency, reorganizations, moratorium, or other Laws affecting creditors' rights generally.

2.2     **Assets**

(a)  The Seller owns, leases, or has the legal right to use the Purchased Assets, used or intended to be used in the conduct of the Business, and, with respect to contract rights, is a party to and enjoys the right to the benefits of all contracts, agreements, and other arrangements used or intended to be used by the Seller (as such relate to the Business) or in or relating to the conduct of the Business, all of which properties, assets, and rights constitute Purchased Assets except for the Retained Assets.

(b)  The Seller has good and marketable title to, or, in the case of leased or subleased Purchased Assets, valid and subsisting leasehold interests in, all the Purchased Assets, free and clear of all Liens.

(c)  The Seller has the complete and unrestricted power and unqualified right to sell, assign, transfer, convey, and deliver the Purchased Assets to the Buyer without penalty or other adverse consequences. Following the consummation of the transactions contemplated by this Agreement and the execution of the instruments of transfer contemplated by this Agreement, the Buyer will own, with good, valid, and marketable title, or lease, under valid and subsisting leases, or otherwise acquire the interests of the Seller in the Purchased Assets, free and clear of any Liens and without incurring any penalty or other

adverse consequence, including any increase in rentals, royalties, or license or other fees imposed as a result of, or arising from, the consummation of the transactions contemplated by this Agreement.

## ARTICLE III
## REPRESENTATIONS AND WARRANTIES OF THE BUYER

In order to induce the Seller to enter into this Agreement, the Buyer hereby makes the representations and warranties set forth below which are true, correct, and complete on the date hereof and shall be true, correct, and complete as of the Closing.

**3.1** **Organization**

The Buyer is a Texas corporation duly organized, validly existing, and in good standing under the laws of the State of Texas. The Buyer has full organizational power, authority, and capacity to execute and deliver this Agreement and the Related Agreements and to perform its obligations hereunder and thereunder and to consummate the transactions contemplated hereby and thereby.

**3.2** **Execution and Delivery**

The execution, delivery, and performance of this Agreement and any related agreement by the Buyer and the consummation of the transactions contemplated hereby and thereby, have been duly authorized and approved by the Buyer, and no other action on the part of the Buyer is necessary to authorize the execution, delivery, and performance of this Agreement and any related agreements by the Buyer and the consummation of the transactions contemplated hereby and thereby (other than the approval of the board of directors of the Buyer's). This Agreement has been duly and validly executed and delivered by the Buyer and constitutes, and upon the execution and delivery by the Buyer of any related agreements, the related agreements will constitute, legal, valid, and binding obligations of the Buyer, as the case may be, enforceable against the Buyer in accordance with their terms, assuming valid execution and delivery of this Agreement and the related agreements by the Seller, and except as enforceability may be limited by bankruptcy, insolvency, reorganizations, moratorium, or other Laws affecting creditors' rights generally.

**3.3** **Authority**

The Buyer has full organizational power and authority to conduct its business as and to the extent now conducted and to own, use, and lease its assets and properties.

## ARTICLE IV
## CONDITIONS TO CLOSING

**4.1** **Conditions to Obligation of the Buyer to Close**

The obligation of the Buyer to affect the closing of the transactions contemplated by this Agreement is subject to the satisfaction prior to or at the Closing of each of the following conditions:

**(a) Representations and Warranties.** The representations and warranties of the Seller contained in this Agreement (i) that are not qualified by "materiality" or "Material Adverse Effect" shall have been true and correct in all material respects when made and shall be true and correct in all material respects as of the Closing Date with the same force and effect as if made as of the Closing Date and (ii) that are qualified by "materiality" or Material Adverse Effect" shall have been true and correct when made and shall be true and correct as of the Closing with the same force and effect as if made of the Closing Date, except to the extent such representations and warranties are as of another date, in which case, such representations and warranties shall be true and correct as of that date with the same force and effect as if made as of the Closing Date and except in the case of clause (ii) above for such failure of such representations and warranties to be true and correct that would not have, individually or in the aggregate, a Material Adverse Effect.

**(b) Observance and Performance.** The Seller shall have performed and complied with all covenants and agreements required by this Agreement to be performed and complied with by it prior to or as of the Closing Date, including the execution and delivery of any related agreements.

**(c) No Legal Actions.** No Governmental Authority shall have issued an order not subsequently vacated, restraining, enjoining, or otherwise prohibiting the consummation of the transactions contemplated by this Agreement. The Seller shall have obtained all regulatory approvals necessary from each Governmental Authority, if any as applicable, to transfer all of the Purchased Assets to the Buyer.

**(d) Proceedings.** All proceedings and actions taken in connection with the transactions contemplated hereby and all certificates mentioned herein or incident to any such transaction shall be reasonably satisfactory in form and substance to the Buyer and its counsel.

**(e) Liens**. All Liens relating to the Purchased Assets shall have been released in full and the Seller shall have delivered to the Buyer written evidence, in form satisfactory to the Buyer in its reasonable sole discretion, of the release of such Liens, if any.

**4.2     Conditions to Obligations of the Seller to Close**

The obligations of the Seller to affect the closing of the transactions contemplated by this Agreement are subject to the satisfaction prior to or at the Closing of the following conditions:

**(a) Representations and Warranties.** To the best of its knowledge and belief the representations and warranties of the Buyer contained in this Agreement shall have been true and correct when made and shall be true and correct in all material respects as of the Closing, except to the extent such representations and warranties are as of another date, in which case, such representations and warranties shall be true and correct as of that date, in each case, with the same force and effect as if made as of the Closing, other than such representations and warranties as are made as of another date;

**(b) Observance and Performance.** The Buyer shall have performed and complied with all material covenants and agreements required by this Agreement to be performed and complied with by it prior to or as of the Closing Date.

**(c) No Legal Actions.** No Governmental Authority shall have issued an order, not subsequently vacated, restraining, enjoining, or otherwise prohibiting the consummation of the transactions contemplated by this Agreement. No person, firm, corporation, or governmental agency shall have instituted an Action or Proceeding which shall not have been previously dismissed seeking to restrain, enjoin, or prohibit the consummation of the transactions contemplated by this Agreement or seeking damages with respect thereto.

**(d) Closing Documents.** The Seller shall have received such further instruments and documents,

normal and customary for transactions such as those contemplated by this Agreement, as may be reasonably required for the Seller to consummate the transactions contemplated hereby.

# ARTICLE V
# COVENANTS

**5.1**     **Conduct of the Seller, the Business, and the Purchased Assets Pending the Acquisition**

The Seller agrees that, from the date hereof until Closing, except to the extent that the Buyer shall otherwise consent in writing:

**(a)**  the Seller shall (i) operate the Business and the Purchased Assets in the ordinary course of business consistent with past practice and use its reasonable best efforts to preserve intact its present business organizations and relationships with persons having business relationships with it; (ii) maintain all of the Purchased Assets in substantially the same condition as such Purchased Assets exist on the date hereof, ordinary wear and tear excepted; and (iii) insure all of the Purchased Assets in such amounts and of such kinds comparable to that in effect on the date hereof, to the extent available at current premiums.

**(b)**  except in the ordinary course of business, the Seller shall not enter into, materially amend, or renew, or waive or release any rights of material value under, any of the Assigned Contracts (including capital leases and contracts for the purchase and/or sale of capital equipment) or Assigned Leases;

**(c)**   the Seller shall not grant any Lien (except a Permitted Lien) on any of the Purchased Assets or allow any such Lien (except a Permitted Lien) to occur or to be created;

**5.2**     **Access to Information**

**(a)**  From the date hereof until the Closing, upon reasonable notice, the Seller shall cause its employees, agents, representatives, accountants, and counsel to: (i) afford the officers, employees, agents, accountants, counsel, financing sources, and representatives of the Buyer reasonable access, during normal business hours, to the offices, properties, plants, other facilities, books and records of the Seller relating to the Business, including access to enter upon such properties, plants, and facilities and to those officers, directors, employees, agents, accountants, and counsel of the Seller who have any Knowledge relating to the Business and (ii) furnish to the officers, employees, agents, accountants, counsel, financing sources, and representatives of the Buyer such additional financial and operating data and other information regarding the assets, properties, liabilities, and goodwill of the Business (or legible copies thereof) as the Buyer may from time to time reasonably request.

**5.3**     **Notification of Certain Matters**

Subsequent to the date of this Agreement and on or prior to the Closing, the Seller, on the one hand, and the Buyer on the other, shall each promptly notify the other of:

**(a)**  the receipt of any notice of, or other communication relating to, a default or event which, with notice or lapse of time or both, would become a default under any of the Assigned Contracts or Assigned Leases or any other agreement by which the Purchased Assets are bound;

**(b)**  the receipt of any notice or other communication from any third party whose consent or approval is or may be required in connection with the transactions contemplated by this Agreement or the Related Agreements, denying such consent or approval;

**(c)**  the receipt of any notice or other communication from any Governmental Authority in connection with the transactions contemplated hereby;

**(d)** any event or events which individually or in the aggregate would have a Material Adverse Effect on the Purchased Assets; or

**(e)** any condition or fact which would not permit either of them to satisfy a condition to the other's obligation to effect the transactions contemplated hereby, or any event or condition known to or discovered by them, as applicable, which if it existed on the date of this Agreement or on the Closing Date, would result in any of the representations and warranties of the applicable Party contained herein being untrue.

ARTICLE VI
TERMINATION

**6.1** <u>Termination</u>

This Agreement may be terminated at any time prior to the Closing Date by mutual consent of the Buyer and the Seller;

ARTICLE VII
MISCELLANEOUS

**7.1** <u>Expenses</u>

Whether or not the transactions contemplated hereby are consummated, all costs and expenses (including without limitation the fees and expenses of investment bankers, attorneys, and accountants) incurred in connection with this Agreement and any related agreement and the transactions contemplated hereby and thereby shall be borne by the Buyer, in the case of costs and expenses incurred by the Buyer; and by the Seller in the case of costs and expenses incurred by the Seller.

**7.2** <u>Notices</u>

All notices, requests, claims, demands, and other communications hereunder shall be in writing and shall be given (and shall be deemed to have been duly given, if given) by hand delivery, transmitted by telegram, email, or telecopy or mailed by registered or certified mail, postage prepaid, return receipt requested to the registered agent for the Parties.

**7.3** <u>Amendments</u>

No supplement, modification, or waiver of this Agreement shall be binding unless executed in writing by all of the Parties.

**7.4** <u>Waiver</u>

At any time prior to the Closing, the Buyer or the Seller may (a) extend the time for the performance of any of the obligations or other acts of the other Party, (b) waive any inaccuracies in the representations and warranties of the other Party contained herein or in any document delivered pursuant hereto and (c) waive compliance with any of the obligations of the other Party or any of the conditions to its own obligations contained herein to the extent permitted by law. Any such waiver or extension shall be effective and valid only if reduced to writing by the Party entitled to provide such extension or waiver. The failure of a Party to exercise any right or remedy shall not be deemed or constitute a waiver of such right or remedy in the future. No waiver of any of the provisions of this Agreement or any related agreements shall be deemed or shall constitute a waiver of any other provision hereof or thereof (regardless of whether similar), nor shall any such waiver constitute a continuing waiver unless otherwise expressly provided. No course of dealing between or among any Persons having any interest in this Agreement shall be deemed effective to modify, amend, or discharge any

part of this Agreement or any rights or obligations of any Person under or by reason of this Agreement.

**7.5     Headings**

The headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

**7.6     Jurisdiction; Waiver of Jury Trial**

(a)     Each of the Parties hereby irrevocably and unconditionally submits to the jurisdiction of the state courts in and for Baldwin County, Alabama and irrevocably agrees that all actions or proceedings arising out of or relating to this Agreement or the transactions contemplated hereby shall be litigated exclusively in such courts. Each of the Parties agrees not to commence any legal proceedings related hereto except in such courts. Each of the Parties irrevocably waives any objection which it may now or hereafter have to the laying of the venue of any such proceeding in any such court and hereby further irrevocably and unconditionally waives and agrees not to plead or claim in any such court that any such action, suit, or proceeding brought in any such court has been brought in an inconvenient forum.

(b)     EACH OF THE PARTIES HEREBY WAIVES ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY ACTION RELATED TO OR ARISING OUT OF THIS AGREEMENT OR ANY RELATED DOCUMENTS OR ANY TRANSACTION CONTEMPLATED HEREBY OR THEREBY.

**7.7     Successors and Assigns**

This Agreement and all of the covenants and agreements contained herein and rights, interests, or obligations hereunder, by or on behalf of any of the Parties, shall bind and inure to the benefit of the respective heirs, personal representatives, successors, and assigns of the Parties whether so expressed or not, except that neither this Agreement nor any of the covenants and agreements herein or rights, interests, or obligations hereunder may be assigned or delegated by Seller prior to or after the Closing, without the prior written consent of Buyer. Buyer may assign its rights and obligations hereunder (including Buyer's right to purchase the Purchased Assets), in whole or in part, to any of its Affiliates without the consent of any of the other Parties. In addition, Buyer may assign its rights and obligations pursuant to this Agreement, in whole or in part, in connection with any disposition or transfer of all or any portion of the Business in any form of transaction without the consent of the Seller. Buyer may assign any or all of its rights pursuant to this Agreement, including its rights to indemnification, to any of its respective lenders as collateral security.

**7.8     Counterparts**

This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but together shall constitute the same instrument; and signatures delivered by facsimile transmission or by e-mail delivery of a ".pdf" format data file, shall be given the same legal force and effect as original signatures.

**7.9     Governing Law**

This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Alabama, without regard to its conflicts of law rules.

**7.10    Entire Agreement**

This Agreement and the exhibits and schedules hereto and the Related Agreements constitute the entire agreement and understanding among the Parties with respect to the subject matter hereof and supersede all prior agreements and understandings, whether written or oral, among the Parties with respect to the subject matter hereof and thereof. There are no warranties, representations, or other agreements between the Parties in

connection with the subject matter hereof except as set forth specifically herein or contemplated hereby.

**7.11    Enforcement Costs**

If any civil action, arbitration, or other legal proceeding is brought for the enforcement of this Agreement, or because of an alleged dispute, breach, default, or misrepresentation in connection with any provision of this Agreement, the successful or prevailing Party or Parties shall be entitled to recover reasonable attorneys' fees, court costs, sales and use taxes, and all expenses even if not taxable as court costs (including, without limitation, all such fees, taxes, costs, and expenses incident to arbitration, appellate, bankruptcy, and post-judgment proceedings), incurred in that proceeding, in addition to any other relief to which such Party or Parties may be entitled. Attorneys' fees shall include, without limitation, paralegal fees, investigative fees, administrative costs, sales and use taxes, and all other charges billed by the attorney to the prevailing Party (including any fees and costs associated with collecting such amounts).

**7.12    Severability**

Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement is held to be prohibited by or invalid under applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement.

**7.13    Interpretation**

The headings and captions used in this Agreement, in any Schedule or Exhibit hereto, in the table of contents or in any index hereto are for convenience of reference only and do not constitute a part of this Agreement and shall not be deemed to limit, characterize, or in any way affect any provision of this Agreement or any Schedule or Exhibit hereto, and all provisions of this Agreement and the Schedules and Exhibits hereto shall be enforced and construed as if no caption or heading had been used herein or therein. Any capitalized terms used in any Schedule or Exhibit attached hereto and not otherwise defined therein shall have the meanings set forth in this Agreement. Each defined term used in this Agreement shall have a comparable meaning when used in its plural or singular form. The use of the word "including" (or definitions thereof) herein shall mean "including without limitation" and, unless the context otherwise required, "neither," "nor," "any," "either," and "or" shall not be exclusive. The Parties intend that each representation, warranty, and covenant contained herein shall have independent significance. If any Party has breached any representation, warranty, or covenant contained herein in any respect, the fact that there exists another representation, warranty, or covenant relating to the same subject matter (regardless of the relative levels of specificity) which such Party has not breached shall not detract from or mitigate the fact that such Party is in breach of the first representation, warranty, or covenant. The Parties have participated jointly in the negotiation and drafting of this Agreement. In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the Parties, and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any of the provisions of this Agreement.

**7.14    No Third-Party Beneficiaries**

Except for the Buyer Indemnitees and the Seller Indemnitees, nothing herein expressed or implied is intended or shall be construed to confer upon or give to any Person other than the Parties and their respective permitted successors and assigns, any rights or remedies under or by reason of this Agreement.

**7.15    Specific Performance**

The Seller acknowledges and agrees that Buyer would be irreparably damaged if any of the provisions of this Agreement are not performed in accordance with their specific terms and that any breach of this Agreement by the Seller could not be adequately compensated in all cases by monetary damages alone. Accordingly, in addition to any other right or remedy to which Buyer may be entitled, at law or in equity, it shall

be entitled to enforce any provision of this Agreement by a decree of specific performance and to temporary, preliminary, and permanent injunctive relief to prevent breaches or threatened breaches of any of the provisions of this Agreement, without posting any bond or other undertaking.

### 7.16  **Remedies Cumulative**

No remedy in this Agreement conferred upon any Party is intended to be exclusive of any other remedy, and each and every such remedy shall be cumulative and shall be in addition to every other remedy given under this Agreement or now or hereafter existing at law or in equity or by statute or otherwise. No single or partial exercise by any Party of any right, power, or remedy under this Agreement shall preclude any other or further exercise thereof.

### 7.17  **Terms**

Terms may be defined elsewhere in the text of this Agreement and shall have the meaning indicated throughout this Agreement.

### 7.18  **Other Definitional Provisions.**

(a)  The words "hereof," "herein" and "hereunder," and words of similar import, when used in this Agreement, shall refer to this Agreement as a whole and not any particular provision of this Agreement.

(b)  The terms defined in the singular shall have a comparable meaning when used in the plural, and vice versa.

(c)  The terms defined in the neuter or masculine gender shall include the feminine, neuter and masculine genders, unless the context clearly indicates otherwise.

*[Signature page follows]*

This Agreement has been duly executed and delivered by the duly authorized officers of the Buyer and the Seller on the date first above written.

**BUYER:**

**DISTRIBUTED LEDGER, INC.,** a Texas corporation

By: _____

Name: John Michael Francis, II

Title: President/CEO


**SELLER:**

**NEW GREEN NETWORK, LLC**, a Wisconsin limited liability company

By: _____

Name: ____Scott Offord_____

Title: _____Owner_____

21