**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **DISTRIBUTED LEDGER, INC.** | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | **CASE NO.:   1:21-cv-490-KD-N** |
| | * | |
| **NEW GREEN NETWORK LLC,** | * | |
| **MILWAUKEE SEO LLC, and SCOTT** | * | |
| **OFFORD** | * | |
| | * | |
| Defendants. | * | |

**<u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS</u>**

NOW COME the Defendants, New Green Network LLC ("NGN"), Milwaukee SEO, LLC ("Milwaukee SEO") and Scott Offord ("Offord") (collectively "Defendants"), by and through their attorneys, SmithAmundsen, LLC, pursuant to Federal Rule of Civil Procedure 12(b)(6), move for entry of an order dismissing Counts II to VIII of Plaintiff, Distributed Ledger, Inc.'s ("Plaintiff" or "DLI") Amending, Supplemental and Restated Complaint (the "Amended Complaint"), and in support thereof, Defendants state as follows:

**I.   INTRODUCTION**

This matter arises from disputes over two contracts entered into between Defendants NGN/Offord and Plaintiff DLI—an asset purchase agreement and an independent contractor agreement. Plaintiff's initial Complaint (Dkt. # 1) on November 10, 2021 included multiple claims that were both groundless and demonstrably frivolous. Plaintiff has taken the chance to amend its Complaint once. However, the allegations in Counts II to VIII of the Amended Complaint (Dkt. # 37) still fail to state a claim upon which relief can be granted. For the reasons discussed below,

Counts II to VIII of the Amended Complaint should be dismissed under Federal Rules of Civil Procedure 12 (b)(6), 8(a)(2), and 9(b).

## II.   RULE 12(b)(6) STANDARD OF REVIEW

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint on the basis that the plaintiff has failed to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6).

While a motion to dismiss under Rule 12(b)(6) accepts as true the well-pleaded allegations of the complaint and draws reasonable inferences therefrom in the plaintiff's favor, to survive the motion "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). In other words, the Plaintiff must plead enough factual content to permit the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *See Iqbal,* 556 U.S. at 678.

A complaint is not sufficient where it merely alleges "labels and conclusions" and "formulaic recitations" of elements of a cause of action. *Twombly*, 550 U.S. at 555. The factual allegations of the complaint "must be enough to raise a right to relief above the speculative level". *Id.* "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

"The purpose of a Rule 12 (b)(6) motion is to test the facial sufficiency" of the complaint. *Brooks v. Blue Cross and Blue Shield of Fla., Inc.,* 116 F. 3d 1364, 1368 (11th Cir. 1997). "Conclusory allegations will not survive a motion to dismiss if not supported by the facts constituting a legitimate claim for relief." *Lombard's, Inc. v. Prince Mfg., Inc.,* 753 F. 2d 974, 975

(11th Cir. 1985). "[I]n reviewing a motion to dismiss, the court needs only accept well-pleaded facts and reasonable inferences drawn from those facts. Unsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal." *Gonzalez v. Reno,* 325 F. 3d 1228, 1235 (11th Cir. 2003) (emphasis added).

"When considering a motion to dismiss ... the court limits its consideration to the pleadings and all exhibits attached thereto." *Thaeter v. Palm Beach Cty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006). When the exhibits attached to the complaint contradict the general and conclusory allegations of the pleading, the exhibits govern despite a court's duty to accept a plaintiff's allegations as true. *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205–06 (11th Cir. 2007).

### III.  STATEMENT OF FACTS

**The Asset Purchase Agreement**

On December 1, 2020, NGN entered into an Asset Purchase Agreement (the "APA") with DLI and agreed to sell its assets to DLI in exchange for 500,000 Class A shares and 500,000 Class B shares of DLI's stock. (*See* Dkt. #37, ¶ 18). Plaintiff alleges that "NGN agrees to sell and transfer all its assets to DLI" (*see id.*) (emphasis added); however, the provisions in the APA executed by the parties (*Id.*, Exh. 1) contradict this assertion. Nowhere in the APA does it state that NGN was selling all of its assets to DLI. Moreover, Section 1.2 of the APA, entitled "Retained Assets," specifically states that "[NGN] will retain ownership of all [its] assets not specifically identified in Section 1.1" (*Id.*, Exh. 1, Section 1.2), indicating that certain assets of NGN were out of the scope of DLI's purchase.

NGN delivered Purchased Assets under the APA to DLI. However, Offord never received the aforementioned shares of DLI's stock. Plaintiff on the one hand claims that Offord received

3

the shares, while on the other hand also admits that the transfer of the stock to Offord was never effectuated. (*See id.*, ¶ 56).

### The Independent Contractor Agreement

On the same day DLI and NGN entered into the APA, they also executed an Independent Contractor Agreement (the "ICA") for NGN to act as an independent contractor to actively manage the assets NGN sold and transferred to DLI. (*See id.*, ¶ 20, Exh. 2). Offord performed the work on behalf of NGN under the ICA as an Asset Management Director of DLI. (*See id.*, ¶ 24). Offord was terminated by DLI on October 27, 2021.

## IV.  ARGUMENTS

### A.    Count II of Plaintiff's Amended Complaint must be dismissed as Plaintiff fails to state a breach of contract claim.

"The elements of a breach-of-contract claim under Alabama law are (1) a valid contract binding the parties; (2) the plaintiff's performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Reynolds Metals Co. v. Hill,* 825 So.2d 100, 105 (Ala. 2002). Plaintiff claims that Defendants breached the APA. However, it fails to plead the second and the third key elements of the claim in its Amended Complaint.

As to the second element of the claim, Plaintiff failed to perform under the APA. Under the APA, Plaintiff was obligated to pay the Purchase Price for NGN's certain assets in the form of DLI's stock, in the following amounts: 500,000 Class B shares and 500,000 Class A shares. (*See* Dkt. #37, Exh. 1, Section 1.3). However, as of the filing of this instant Motion, approximately sixteen (16) months past December 1, 2020 – the Closing Date of the asset purchase transaction (*see id.*, Section 1.4) – Plaintiff still has not transferred any of its shares to NGN or Offord.

In fact, Plaintiff admits its failure to perform in its Amended Complaint. Despite its allegation that Offord received the shares, DLI admits that the transfer of the stock to Offord was never effectuated. (*See id.*, ¶ 56).

Plaintiff claims that it failed to transfer the stock to Offord due to Offord's failure to execute certain shareholder agreements proposed by DLI. (*See id.*, ¶ 56). Plaintiff alleges that "[a] condition of the sale and transfer of the DLI shares to NGN was the execution by Offord of the Class A and Class B Shareholder Agreements." (*See id.*, ¶ 21). However, this condition for DLI to transfer the shares to NGN does not exist anywhere in the APA (*see id.*, Exh. 1), which contains an integration clause and represents the "Entire Agreement" among the parties with respect to the asset purchase transaction. (*See id.*, Exh. 1, Section 7.10). Moreover, Section 4.1 of the APA, entitled "Conditions to Obligations of the Buyer to Close," elaborates the conditions that have to be satisfied by the NGN prior to or at the Closing of the APA for DLI to affect the closing of the transactions contemplated by the APA. (*See id.*, Exh. 1, Section 4.1). It does not require NGN/Offord to sign any shareholder agreements before DLI is obligated to transfer the shares to Offord and pay the Purchase Price under the APA, which is an obligation that DLI has pulled out of thin air. (*See id.*). In other words, the requirement for Offord to sign the Class A and Class B Shareholder Agreements proposed by DLI was never a prerequisite for DLI to perform under the APA.

Despite having not received the shares from DLI, Offord reasonably relied upon DLI's promise to perform its contractual obligations in good faith and publicly held himself out as a shareholder of DLI. (*See id.*, ¶ 23). Plaintiff even allowed Offord to vote once as DLI's shareholder during the one year after the APA was executed. (*See id.*). However, these allegations cannot

5

change or conceal the fact that DLI failed to perform under APA and never transferred any of the aforementioned shares to Offord/NGN.

Moreover, Plaintiff fails to allege any nonperformance of the APA on the part of Offord or NGN to successfully plead the third element of the claim. Other than making a general and vague assertion that "NGN failed to deliver key assets to DLI" and "NGN did not own some of the assets that NGN promised to deliver" (*see id.*, ¶ 55), Plaintiff cannot identify one single asset that NGN actually failed to deliver to DLI at the consummation of the APA. Plaintiff fails to plead any facts to permit the Court to draw a reasonable inference that Defendants breached the APA. *See Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff alleges that Offord misappropriated the 20,000 subscriber blockchain mining email list and multiple popular Telegram groups; failed to turn over the administrative control of the Telegram groups; and failed to surrender the administrative control of the cryptomining.tools domain. (*See* Dkt. #37, ¶¶ 48, 49). Although these items were identified as Purchased Assets in the APA (*see id.*, Exh. 1, Section 1.1), the reason they were in the control of Offord after the APA was executed was solely because Offord/NGN was retained by DLI to manage these assets, not because NGN failed to deliver them to DLI. Under the ICA, Offord had specific authority and responsibility to actively manage these assets DLI purchased from NGN. (*See id.*, Exh. 2, Section 2). The alleged misappropriation of these assets did not occur until after Offord was terminated by DLI. Plaintiff obfuscates Offord's alleged failure to turn over the administrative control of certain Purchased Assets he managed for DLI after his termination, with NGN's failure to deliver those Purchased Assets to DLI under the APA.

Plaintiff also claims that "[o]n information and belief, other Telegram groups were also created by Offord while working for DLI, but never disclosed to DLI, the actual owners of these

6

Telegram groups." (*Id.*, ¶ 48). However, this assertion contradicts the APA, under which NGN only sold "multiple popular Telegram groups" to DLI, not <u>all</u> of its existent and future Telegram groups. (*See id.*, Exh. 1, Section 1.1). The phrase "multiple popular" prefixed to the Telegram groups clearly indicates that DLI only purchased certain preexisting Telegram groups as of the time when the APA was formed, and does not include any future ones, as the parties would not be able to determine whether a Telegram group that had not been created by Offord/NGN at the time of the APA would be "popular" or not. Put simply, the Telegram groups allegedly created by Offord while working for DLI were not part of the Purchased Assets that NGN was contractually obligated to deliver to DLI under the APA. Plaintiff fails to allege any Purchased Assets that NGN/Offord did not deliver to DLI.

Plaintiff fails to plead two critical elements of its breach of contract claim. Therefore, Count II of the Amended Complaint must be dismissed due to Plaintiff's failure to state a claim upon which relief can be granted.

**B.     Count III of Plaintiff's Amended Complaint must be dismissed due to Plaintiff's failure to state a claim upon which relief can be granted.**

Plaintiff's Count III claims that Offord violated the Alabama Trade Secrets Act (the "ATSA"). However, Plaintiff fails to plead any information that is protected by the ATSA and fails to allege any facts to show that Offord misappropriated any trade secrets.

The ATSA defines a "trade secret" as follows:

> A 'trade secret' is information that:
> a. Is used or intended for use in a trade or business;
> b. Is included or embodied in a formula, pattern, compilation, computer software, drawing, device, method, technique, or process;
> c. Is not publicly known and is not generally known in the trade or business of the person asserting that it is a trade secret;
> d. Cannot be readily ascertained or derived from publicly available information;
> e. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy; and

f. Has significant economic value.

*Systrends, Inc. v. Group 8760, LLC*, 959 So. 2d 1052, 1065 (Ala. 2006), quoting § 8–27–2(1).

The party asserting the trade secret has the burden to show that it is included or embodied in the categories listed in § 8–27–2(1)." *Public Systems, Inc. v. Towry,* 587 So.2d 969, 971 (Ala. 1991). Threadbare recitals of the elements of "trade secret" supported by mere conclusory statements do not suffice. *Pugh v. Horace*, 2014 WL 912000, at *1 (S.D. Ala. Feb. 10, 2014).

Here, Plaintiff only makes a general and vague assertion that Offord, while he was working for DLI, was given access to "all aspects of the confidential and proprietary materials, information, systems, processes, customers and pricing" (*see* Dkt. #37, ¶ 55). Other than making general recitals of the six (6) elements of a trade secret under the ATSA (*see id.*, ¶ 59), Plaintiff fails to present any facts to show that any information to which Offord had access satisfies the requirements of a "trade secret" entitled to protection under the ATSA.

In addition, the ATSA describes "misappropriation" as follows:

Misappropriation.

A person who discloses or uses the trade secret of another, without a privilege to do so, is liable to the other for misappropriation of the trade secret if:
  (1) That person discovered the trade secret by improper means;
  (2) That person's disclosure or use constitutes a breach of confidence reposed in
  that person by the other;
  (3) That person learned the trade secret from a third person, and knew or should
  have known that (i) the information was a trade secret and (ii) that
  the trade secret had been appropriated under circumstances which violate the
  provisions of (1) or (2), above; or
  (4) That person learned the information and knew or should have known that it
  was a trade secret and that its disclosure was made to that person by mistake.

*Systrends, Inc.*, 959 So. 2d at 1065–66, quoting § 8–27–3.

Other than making unsupported and conclusory allegations that Offord willfully and maliciously misappropriated DLI's trade secrets (*see* Dkt. #37, ¶ 60), Plaintiff fails to identify a single piece of trade secret of DLI's that was improperly disclosed or misappropriated by Offord.

8

Plaintiff's Amended Complaint is devoid of any facts to show Offord engaged in any enjoinable conduct that improperly disclosed or used any of DLI's trade secrets.

For these reasons, Count III of the Amended Complaint must be dismissed since Plaintiff fails to state a violation of the Alabama Trade Secrets Act claim.

**C.     Count IV of Plaintiff's Amended Complaint must be dismissed as it fails to meet the heightened pleading requirements of fraud required by Fed. R. Civ. P. 9(b).**

The heightened pleading requirements mandated by Fed. R. Civ. P. 9(b) apply to Count IV of Plaintiff's Amended Complaint. Fraud claims have always been subject to Fed.R.Civ.P. 9(b)'s heightened pleading requirements, which require a complaint "to state with particularity the circumstances constituting fraud." *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008). Rule 9(b) requires a plaintiff to plead more than conclusory allegations that certain statements were fraudulent; a complaint must allege facts giving rise to an inference of fraud. *See United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1313 (11th Cir. 2002) ("If Rule 9(b) is to carry any water, it must mean that an essential allegation and circumstance of fraudulent conduct cannot be alleged in ... conclusory fashion.").

To satisfy Rule 9(b), the complaint must set forth "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Tello v. Dean Witter Reynolds, Inc.,* 494 F.3d 956, 972 (11th Cir. 2007). The plaintiff must plead the who, what, when, where, and how of the allegedly false statements. *See Mizzaro*, 544 F.3d at 1237.

Here, assuming the "Independent Sales Agreement" referenced in Count IV is a clerical error, by which Plaintiff actually refers to the Independent Contractor Agreement (Dkt. #37, Exh.

9

2) between DLI and NGN, Plaintiff has fallen far short of meeting the heightened pleading standard to plead any fraud committed by Offord when entering into the ICA.

For its fraud claim against Offord, Plaintiff only makes general and conclusory allegations that "upon information and belief", Offord never intended to comply with his obligations under the ICA and instead, he intended to divert DLI's assets and resources to his own use and benefit. (*See id.*, ¶ 63).

Count IV is devoid of any particularity to satisfy the requirements of Fed. R.Civ.P. 9(b). Specifically, Plaintiff has failed to allege any false statements made by Offord to DLI, the dates when and places where any fraudulent claims occurred, and the exact contents of the alleged misrepresentations. The allegations in Count IV are not specific enough to give Defendants fair notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge. In sum, Count IV is no more than a series of "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" that cannot survive the dismissal. *See Iqbal,* 556 U.S. at 678. Thus, Count IV of the Amended Complaint must be dismissed for failing to meet the heightened pleading requirements mandated by Fed. R. Civ. P. 9(b).

**D.     Count V of Plaintiff's Amended Complaint must be dismissed due to Plaintiff's failure to state a defamation claim upon which relief can be granted.**

Under Alabama law, the elements of a cause of action for defamation are: 1) a false *and* defamatory statement concerning the plaintiff; 2) an unprivileged communication of that statement to a third party; 3) fault amounting at least to negligence on the part of the defendant; and 4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication of the statement." *Wal-Mart Stores, Inc. v. Smitherman*, 872 So. 2d 833, 840 (Ala. 2003).

10

"A district court considering a motion to dismiss shall begin by identifying conclusory allegations that are not entitled to an assumption of truth—legal conclusions must be supported by factual allegations. *Randall v. Scott*, 610 F.3d 701, 709-10 (11th Cir. 2010). Next, the court "should assume, on a case-by-case basis, that well pleaded factual allegations are true and then determine whether they plausibly give rise to an entitlement to relief. *Id.* at 710. Plausibility means something more than allegations that are "merely consistent with" liability. *Iqbal*, 556 U.S. at 678.

To plead its defamation claim against Offord, Plaintiff only alleges that "on information and belief," Offord "communicated to DLI customers, vendors and others in the Crypto Industry that DLI's new sale channels were 'fake'" (*see* Dkt. #37, ¶ 66) and the actions of Offord caused harm to DLI (*see id.*, ¶ 67). These mere conclusory allegations unsubstantiated with facts cannot suffice to plead a claim of defamation. *See Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013) (refusing to take as true the plaintiff's allegations "upon information and belief" that the supply of pentobarbital possessed by the defendant is either expired, illegally obtained, or compounded pentobarbital); *see also Twombly*, 550 U.S. at 551 (declining to take as true the conclusory allegation "upon information and belief" that the companies had entered a conspiracy without enough facts to make that statement plausible).

Although Rule 8 of the Federal Rules of Civil Procedure does not require detailed factual allegations, it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. To speculate about the possibility of a claim fails to comport with the Rule 8 pleading standards as outlined in *Iqbal*. The well-pled allegations must nudge the claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Plaintiff's Count V contains only unwarranted speculation masquerading as facts. Other than the conclusory allegation based "on information and belief," there is no specific factual

11

allegation asserted in support of Plaintiff's defamation claim. Plaintiff fails to provide what information it relies on to make the conclusory allegation in Count V. It does not explain the basis it used to form the belief that Offord defamed DLI. In addition, Plaintiff fails to plead *facts* identifying any actual defamatory communication by Offord to any of DLI's customers, vendors or others. Plaintiff is unable to identify any specific instance when Offord actually contacted identifiable persons who were DLI's customer, vendor or others in the Crypto Industry. It fails to provide any information concerning whether or not any such alleged defamatory conversation actually occurred, the date and/or time of this supposed conversation, or whether that content was even defamatory. Moreover, there is no fact asserted to show Offord's alleged misconduct amounted at least to negligence, a critical element to plead defamation.

Plaintiff has not alleged sufficient facts to nudge his claim that Offord made false claim about DLI's new sale channels from conceivable to plausible. It fails to raise a right of relief above the speculative level. "Conclusory allegations will not survive a motion to dismiss if not supported by the facts constituting a legitimate claim for relief." *Lombard's, Inc. v. Prince Mfg., Inc.,* 753 F. 2d 974, 975 (11th Cir. 1985). Plaintiff's defamation claim should be dismissed for failure to state sufficient facts in the Amended Complaint to support the claim.

E.  **Count VI of Plaintiff's Amended Complaint must be dismissed because Plaintiff fails to allege any facts to support its petition for declaratory judgment.**

Count VI of the Amended Complaint is seeking declaratory judgment on the issue of whether Offord is a shareholder of DLI. (*See* Dkt. #37, ¶ 69).

"The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides in relevant part that in a case of actual controversy ... any court of the United States ... may declare the rights and legal relations of any interested party seeking such declaration." *Nat'l Tr. Ins. Co. v. S. Heating & Cooling Inc.*, 12 F.4th 1278, 1281 (11th Cir. 2021). The Supreme Court has repeatedly

characterized the Declaratory Judgment Act (the "Act") as "an enabling Act, which confers a discretion on courts rather than an absolute right upon the litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995). It only gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so. *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1330 (11th Cir. 2005). In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration. *Wilton*, 515 U.S. at 288.

The threshold question in a declaratory judgment action is whether a justiciable controversy exists. *See, e.g., Atlanta Gas Light Co. v. Aetna Cas. And Sur. Co.*, 68 F.3d 409, 414 (11th Cir. 1998). The "actual controversy" requirement of the Act mirrors the "case or controversy" requirement of Article III, section 2 of the United States Constitution. *Provident Life & Accident Insurance Co. v. Transamerica-Occidental Life Insurance Co.*, 850 F.2d 1489, 1490-91 (11th Cir. 1988). The requirement looks to "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *GTE Directories Publishing Corp. v. Trimen America, Inc.,* 67 F.3d 1563, 1567 (11th Cir. 1995)

Here, Plaintiff fails to allege any facts that necessitate or justify its claim for declaratory judgment. More specifically, Plaintiff asserts no facts to support its petition for a declaration that Offord is not a shareholder of DLI.

There is no controversy that Offord is DLI's shareholder. NGN/Offord has fully performed its obligations under the APA and delivered the Purchased Assets to DLI and, therefore, is entitled to the Purchased Price and owns 500,000 Class A shares and 500,000 Class B shares of DLI's stock. The Court should not allow Plaintiff to obfuscate Offord's alleged failure to return the

13

administrative control of certain assets DLI purchased from NGN after his termination with NGN's failure perform under the APA.

Moreover, the fact that Offord did not sign the two shareholder agreements proposed by DLI (Dkt. #37, Exh. 3 & 4) does not affect Offord's shareholder status. The APA represents the "Entire Agreement" among the parties with respect to the asset purchase transaction. (*See id.*, Exh. 1, Section 7.10). It does not mention the two shareholder agreements at all. There is no provision or covenant in the APA that sets forth the execution of the two shareholder agreements as a condition precedent for DLI to pay the Purchase Price. In fact, Section 4.1 of the APA, entitled "Conditions to Obligations of the Buyer to Close," specifically elaborates the conditions that have to be satisfied by the NGN prior to or at the Closing of the APA. (*See id.*, Exh. 1, Section 4.1). None of the conditions in Section 4.1 requires NGN/Offord to sign any shareholder agreements before DLI is obligated to transfer the shares to Offord. (*See id.*). In other words, Offord signing the Class A and Class B Shareholder Agreements proposed by DLI is never a prerequisite for him to become a shareholder of DLI under the APA. Because of this, DLI's failure to effectuate the transfer of the shares to Offord does not negate Offord's stock ownership.

Plaintiff's demand for declaratory judgment on the issue of whether Offord is a shareholder of DLI is meaningless. Plaintiff fails to present any reason or basis in this case for the Court to entertain any arguments concerning this issue. There is no "actual controversy" for the Court to determine. The dismissal of Plaintiff's declaratory judgment claim is warranted.

Even if the Court decides to entertain the declaratory judgment action, it should find that Offord is a shareholder of DLI. Plaintiff asks the Court to apply Texas law in the declaratory judgment action and urges the Court to find that Offord is not a shareholder of DLI. (*See id.*, ¶¶

74-76). However, the document that granted Offord the eligibility to be a shareholder of DLI is the APA, which provides that the governing law is Alabama law. (*See id.*, Exh. 1, Section 7.9).

Plaintiff alleges that under Tex. Business Organizations Code, the transfer of stock does not become effective until the consideration for the stock is delivered. (*See id.*, ¶ 75). Even if Texas law is found to be applicable, Offord is still a shareholder of DLI because NGN/Offord delivered the Purchased Assets – the consideration of the 500,000 Class A shares and 500,000 Class B shares of DLI's stock – to DLI. Offord's stock ownership should not be deprived due to DLI's own failure to effectuate the transfer of those shares to Offord.

In Count VI, Plaintiff also seeks rescission of the APA and the two shareholder agreements as an alternative relief. (*Id.*, ¶ 77). However, Plaintiff fails to allege any basis to justify rescission.

Federal law is clear that an action for rescission is equitable. *Phillips v. Kaplus*, 764 F.2d 807, 812 (11th Cir. 1985). It is axiomatic that equitable relief is only available where there is no adequate remedy at law; cases in which the remedy sought is the recovery of money damages do not fall within the jurisdiction of equity. *Rosen v. Cascade Int'l, Inc.*, 21 F.3d 1520, 1527 (11th Cir. 1994). "It is generally held that the cancellation of an executed contract is an exertion of the most extraordinary power of a court of equity, which will not be exercised except in a clear case and on strong and convincing evidence." *Loxley S., L.L.C. v. W. Express, Inc.*, 2011 WL 2469823, at *3 (S.D. Ala. June 21, 2011), quoting *Cross v. Maxwell,* 263 Ala. 509, 513, 83 So.2d 211, 214–215 (Ala. 1955).

With regard to the breach of the APA claim, Plaintiff alleges no facts to show that breach of contract damages would not adequately compensate it for its losses, as opposed to the remedy the Plaintiff would receive for rescission of the APA. Moreover, as stated above in Section A, Plaintiff fails to allege any breach of the APA on the part of NGN/Offord. NGN has fully

15

performed its obligations under the APA and delivered the Purchased Assets to DLI. Plaintiff also admits that DLI had been using the assets it purchased from NGN (*see* Dkt. #37, ¶ 31 as an example) since December 1, 2020 until at least when Offord was terminated. The Amended Complaint fails to provide any ground for rescission of the APA.

Plaintiff cannot rescind the shareholder agreements either since to rescind a contract, the contract first has to exist. As admitted by Plaintiff, the two Stock Share Agreement were never executed by Offord. (*See id.*, ¶¶16, 23). The Amended Complaint contains no facts for the Court to find the unexecuted shareholder agreements legally effective in the absence of Offord's agreement.

Plaintiff's request for rescission of APA and the two shareholder agreements therefore must be dismissed.

**F.     Count VII of Plaintiff's Amended Complaint must be dismissed due to Plaintiff's failure to state a breach of contract claim.**

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court set forth the parameters of a well-pleaded complaint. A claim for relief "must set forth enough factual matter (taken as true) to suggest the required elements of a cause of action." *Id.* at 556; *see also Watts v. Florida Int'l University*, 495 F.3d 1289, 1295 (11th Cir. 2007)

Assuming the "stock transfer agreements" referenced in Count VII is a clerical error, by which Plaintiff actually refers to the two Shareholder Agreements (Dkt. #37, Exhs. 3 & 4). Plaintiff's Count VII must be dismissed due to Plaintiff's failure to allege the fundamental element of a breach of contract claim – a valid contract binding the parties. As previously referenced, a critical element of a breach-of-contract claim under Alabama law is the that there must be a valid contract binding the parties. *Reynolds Metals Co.,* 825 So.2d at 105. The two Shareholder Agreements proposed by DLI were never executed by Offord. (*See* Dkt. #37, ¶¶16, 23). Plaintiff

16

pleads no facts to support that they should be found legally effective either. Offord cannot be forced to be bound by the terms and conditions in the Shareholder Agreements he never agreed to.

### G. Count VIII of Plaintiff's Amended Complaint must be dismissed as Plaintiff fails to allege any facts to show the equitable remedy of accounting is available in this case.

In Count VIII of the Amended Complaint, Plaintiff makes an overly broad and vague request for an accounting of "all transactions by Offord relating to the subject matter of this litigation from the effective date of the Asset Purchase Agreement and the Independent Contractor Agreement to date (from December 1, 2020 to date)." (*See id.*, ¶ 83).

However, accounting is an equitable remedy. *Witman v. Mashburn*, 286 Ala. 209, 238 So. 2d 709, 713 (Ala. 1970). It is well-settled that "equitable relief is available only in the absence of an adequate remedy at law." *See Mitsubishi Int'l Corp. v. Cardinal Textile Sales, Inc.,* 14 F.3d 1507, 1518 (11th Cir. 1994).

The Amended Complaint contains no facts to show that the existing legal remedies are insufficient to redress Plaintiff's alleged damages. Accounting would not be available absent some independent cause of action. *Johnson v. Pullman, Inc*., 845 F.2d 911, 913 (11th Cir. 1988). Plaintiff fails to identify any independent cause of action it is relying on to support the request for accounting. Plaintiff may argue that its accounting request is associated with its Count I breach of contract (APA) and Count II breach of contract (ICA) claims, since it claims that it "seeks an accounting of all transactions of Offord under or relating to the subject matter of the contracts" (the APA and the ICA). (*See* Dkt. #37, ¶ 84). However, it still fails to remedy Plaintiff's failure of alleging any facts to demonstrate that the breach of contract damages would not adequately compensate it for the alleged losses.

Under Alabama law, the equitable remedy of accounting is available: (1) when accounts are mutual, (2) when an account is "so difficult and complicated to adjust that relief at law is

17

inadequate," or (3) "[when] a fiduciary relationship exists between the parties." *Whitman v. Mashburn*, 286 Ala. 209, 238 (Ala. 1970). Plaintiff fails to allege that any mutual account exists between Offord and DLI. *See Kirksey Motors, Inc. v. General Acceptance Corp.*, 276 Ala. 270, 161 So. 2d 475 (Ala. 1964) (Accounts are mutual if there are debits and credits on both sides). In addition, Plaintiff has not plead any facts to show the account it intends to conduct accounting on is difficult or complicated to justify the equitable relief of accounting. Moreover, Plaintiff has made no showing that Offord owed a fiduciary duty to DLI.

"[E]quity intervenes only when there is no remedy at law or the remedy is inadequate." *United States v. Bradley*, 644 F.3d 1213, 1310 (11th Cir. 2011). The Amended Complaint lacks any facts to show Plaintiff may not have adequate remedies at law. An equitable remedy of accounting is not warranted in this case. The Court should not grant Plaintiff's request for accounting that is intended to harass Offord, impose undue burden and expenses on Offord, and seek proprietary information of his businesses in the crypto industry. Therefore, Count VIII must be dismissed.

## V.  CONCLUSION

For the above stated reasons, Defendants, New Green Network LLC, Milwaukee SEO, LLC and Scott Offord, respectfully move this Honorable Court to enter of an order dismissing Counts II to VIII of Plaintiff, Distributed Ledger, Inc.'s Amending, Supplemental and Restated Complaint.

    Respectfully Submitted:

    */s/Caroline T. Pryor*_____
    CAROLINE T. PRYOR (PRYOC 2802)
    SARAH CROSS RYAN (CROSS5186)
    Attorneys for Defendants

**OF COUNSEL:**

CARR, ALLISON
6251 Monroe Street, Suite 200
Daphne, Alabama 36526
(251) 626-9340
(251) 626-8928 - Facsimile
cpryor@carrallison.com
sryan@carrallison.com

                                                                     /s/Gary Zhao_____
                                                                       GARY ZHAO
                                                                       JOSEPH CARLASARE
                                                                       Attorneys for Defendants

**OF COUNSEL:**

Smith Amundsen LLC
150 North Michigan Avenue, Suite 3300
Chicago, IL  60601
(312) 894-3377
(312) 997-3423 - Facsimile
GZhao@salawus.com

## **CERTIFICATE OF SERVICE**

      I do hereby certify that I have on this 4th day of April, 2022 electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following and that I hereby certify that I have mailed by placing a copy of same in the United States Mail, first-class postage prepaid and properly addressed to those non CM/ECF participants:

Dennis D. Green, Jr.
Law Office of Dennis D. Green, Jr., P.C.
P.O. Box 132741
Spring, TX 77393

R. Joshua Koch, Jr.
Koch & Schmidt, LLC
650 Poydras Street, Suite 2660
New Orleans, LA 70130

                                                                    /s/ Caroline T. Pryor_____
                                                                       OF COUNSEL