**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **DISTRIBUTED LEDGER, INC.** | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | CASE NO.:   1:21-cv-490-KD-N |
| | * | |
| **NEW GREEN NETWORK LLC,** | * | |
| **MILWAUKEE SEO LLC, and SCOTT** | * | |
| **OFFORD** | * | |
| | * | |
| Defendants. | * | |

## DEFENDANTS' REPLY IN SUPPORT OF THEIR RULE 12(B)(6) MOTION TO DISMISS COUNTS II TO VIII OF DISTRIBUTED LEDGER, INC.'S ( "DLI") AMENDING, SUPPLEMENTAL AND RESTATED COMPLAINT

COME NOW the Defendants, NEW GREEN NETWORK, LLC, MILWAUKEE SEO LLC and SCOTT OFFORD (collectively "Defendants"), by and through their attorneys, SMITHAMUNDSEN LLC, and for their Reply in Support of Their Rule 12(b)(6) Motion to Dismiss Counts II to VIII of Plaintiff, Distributed Ledger, Inc.'s ("Plaintiff" or "DLI") Amending, Supplemental and Restated Complaint (the "Amended Complaint"), and in support thereof, Defendants state as follows:

**1.     Plaintiff's Count II Breach of Asset Purchase Agreement Must be Dismissed.**

Count II Breach of the Asset Purchase Agreement ("APA") of Plaintiff's Amended Complaint must be dismissed because Plaintiff failed to perform its obligations under the APA and it fails to allege any nonperformance of the APA on the part of Offord or NGN.

DLI never denied that it did not perform under the APA in its Amended Complaint or its Response to Defendants' Motion to Dismiss (the "Response"). Under the APA, Plaintiff was contractually obligated to pay NGN or Offord 500,000 of DLI's Class B shares and 500,000 of it Class A shares (the "Purchase Price") in order to buy the Purchased Assets. (*See* Dkt. #37, Exh. 1,

Section 1.3). There is no controversy that Plaintiff does not deny that it did not transfer any of the shares to NGN or Offord; in other words, it did not pay the Purchase Price clearly prescribed in the APA.

Plaintiff argues that the asset purchase transaction between it and NGN/Offord was premised on the execution of the four agreements attached to the Amended Complaint – the APA (Dkt. #37, Exh. 1), the Independent Contractor Agreement (Dkt. #37, Exh. 2), DLI Class A Common Stock Share Agreement (Dkt. #37, Exh. 3), and DLI Class B Common Stock Purchase Agreement (Dkt. #37, Exh. 4). It claims that it was NGN/Offord's failure to execute the third and fourth agreements that caused its failure to perform under the APA.

To support its proposition, Plaintiff relies on Section 7.10 of the APA, entitled "Entire Agreement," which states the following in the pertinent part:

> This Agreement and the exhibits and schedules hereto <u>and the Related Agreements</u> constitute the entire agreement and understanding among the parties […]. (*See* Dkt. #37, Exh. 1, at 8) (emphasis added).

By quoting Section 7.10, Plaintiff attempts to establish a basis for finding a prerequisite of its performance under the APA that never existed. As Plaintiff admitted itself, the APA does not list or identify the "Related Agreements." (Dkt. #54 at 6). Nonetheless, it still tries to force the Court to accept that the Class A Common Stock Share Agreement and Class B Common Stock Purchase Agreement were part of the asset purchase transaction and that NGN/Offord's execution of them was a precondition for DLI to transfer the shares, by simply stating that the Court has to take it as true because the Amended Complaint alleged so. (See *id.*). Other than this conclusory allegation, Plaintiff cannot present any facts to show it was truly the case when the parties executed the APA. Plaintiff's wrongful attempt to excuse its contractual performance cannot succeed as the APA and these other agreements do not support Plaintiff's argument. "When considering

2

a motion to dismiss ... the court limits its consideration to the pleadings and all exhibits attached thereto." *Thaeter v. Palm Beach Cty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006). When the exhibits attached to the complaint contradict the general and conclusory allegations of the pleading, the exhibits govern despite a court's duty to accept a plaintiff's allegations as true. *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205–06 (11th Cir. 2007).

Although Section 7.10 of the APA mentioned "the exhibits and schedules hereto <u>and the Related Agreements</u> constitute the entire agreement," there was actually no exhibit or schedule attached to the APA to be part of the agreement. Therefore, it is not surprising that there was never any "Related Agreements." Both the DLI Class A Common Stock Share Agreement and DLI Class B Common Stock Purchase Agreement clearly show that they are <u>not</u> the "Related Agreements" anticipated by the APA.

Instead of 500,000 Class A shares as stated in the APA (Dkt. #37, Exh. 1, Section 1.3), the DLI Class A Common Stock Share Agreement is for a transfer of 100,000 shares of DLI's Class A Common Stock. (*See* Dkt. #37, Exh. 3). In addition, under the DLI Class A Common Stock Share Agreement, DLI would issue and transfer to the Shareholder 100,000 shares of the Class A Common Stock "for the consideration of the Shareholder's <u>business acumen and other such skills and talents</u> that Shareholder will render to DLI."(*Id.*, Section 1.2) (emphasis added). At the closing of this agreement, DLI "shall deliver to the Shareholder a certificate representing the Shares <u>in exchange for the services and consultation of the Shareholder</u>." (*Id.*, Section 2.2) (emphasis added). The transfer of the shares anticipated by the DLI Class A Common Stock Share Agreement was not even in exchange for any NGN assets – the subject of the APA. The DLI Class A Common Stock Share Agreement presented by the Plaintiff is unrelated to the asset purchase transaction. If Offord signed this Class A Common Stock Share Agreement, he would only need to render the

"business acumen and other such skills and talents" to DLI to be entitled to the 100,000 shares of DLI's Class A Common Stock. There is absolutely no ground for the execution of this Class A Common Stock Share Agreement to be a precondition for DLI to perform under the APA.

Similarly, the Class B Common Stock Purchase Agreement is also unrelated to the APA. The Class B agreement is for Offord to purchase 750,000 shares of DLI's Class B Common Stock at the price of $1.00 per Share, but not 500,000 Class B shares as stated in the APA (Dkt. #37, Exh. 1, Section 1.3). (*See* Dkt. #37, Exh. 4, Section 1.2). Under the DLI Class B Common Stock Purchase Agreement, at the closing, DLI "shall deliver to the Shareholder a certificate representing the Shares in exchange for payment of the purchase price therefor paid by immediately available funds in U.S. Currency." (*Id.*, Section 2.2) (emphasis added). If Offord signed this agreement, he would have to pay $750,000 in exchange for the 750,000 shares of DLI's Class B Common Stock. This transaction is absolutely unrelated to the purchase of the NGN assets anticipated by the APA. The Class B Common Stock Purchase Agreement certainly cannot function as a prerequisite for DLI to perform under the APA. Neither the DLI Class A Common Stock Share Agreement nor the DLI Class B Common Stock Purchase Agreement references the APA at all.

Moreover, the APA did not contemplate the execution of the DLI Class A Common Stock Share Agreement and DLI Class B Common Stock Purchase Agreement to be the prerequisite of DLI's performance under the APA. Nowhere in the APA does it state that NGN/Offord has to sign the DLI Class A Common Stock Share Agreement and DLI Class B Common Stock Purchase Agreement before DLI is obligated to transfer the 500,000 Class A shares and 500,000 Class B shares to him. The APA has a specific provision – Section 4.1, entitled "Conditions to Obligations of the Buyer to Close" – that lists out the conditions that NGN/Offord had to meet at the closing of the APA. (Dkt. #37, Exh. 1, Section 4.1). It does not require NGN/Offord to sign the DLI Class

4

A Common Stock Share Agreement or the DLI Class B Common Stock Purchase Agreement before DLI is obligated to transfer the shares to Offord.

Even if there intended to be other agreements associated with the APA, it would refer to the Independent Contractor Agreement executed by the parties on the same day as the APA. As Plaintiff alleges, negotiations between the parties regarding the purchase of the NGN assets resulted in "Offord's agreement to sell the assets of NGN to DLI, and for him to work as independent contractor with DLI" to "'actively manage' the assets sold and transferred to DLI in return for a salary of $84,000 and other benefits." (Dkt. #37, ¶¶15, 20). DLI hired Offord to manage the assets it purchased from NGN under the APA. The Independent Contractor Agreement contained a list of assets that Offord was to actively manage, which were the assets DLI allegedly purchased from NGN. The APA and the Independent Contractor Agreement were related.

In contrast, the APA and the DLI Class A Common Stock Share Agreement and DLI Class B Common Stock Purchase Agreement do not cross reference each other. The latter two dictate two transactions that are completely separate from the asset purchase transaction under the APA. If Offord had to sign them in order for DLI to transfer the shares described in the APA to him, these two agreements should have mentioned that the transfers of shares under them are for the purchase of the NGN's assets. However, the Purchased Assets are not referenced anywhere in these two agreements. There is no term in these two agreements, or the APA requiring DLI to transfer the 500,000 Class A shares and 500,000 Class B shares to Offord even if he signed the two agreements. Plaintiff's allegation that Offord's execution of these two agreements was a precondition for DLI to pay for the assets it purchased from NGN is completely contradicted by these agreements. Thus, these agreements attached to the Amended Complaint govern here. The Court should not take Plaintiff's false allegation of the precondition as true.

Section 3.2 of the APA does not support Plaintiff's position either. Section 3.2 is part of Article III – Representations and Warranties of the Buyer – of the APA, which describe the contractual obligations *of the Buyer*, Plaintiff DLI, and *not the Seller*, NGN/Offord, under the APA. (*See* Dkt. #37, Exh. 1, at 4). The reference to the undefined "related agreement" that need to be executed, delivered, and performed by the Buyer in Section 3.2 has no bearing on the Seller NGN/Offord's obligations.

Plaintiff's argument that Offord acted in bad faith for not executing the DLI Class A Common Stock Share Agreement and DLI Class B Common Stock Purchase Agreement is absurd and groundless. These two agreements were never executed by either party. DLI never performed its obligations under either agreement by transferring any of its shares to Offord. Offord and NGN are certainly not bound by any clauses in these agreements, including the non-compete clauses.

DLI failed to perform under the APA with no excuse. Therefore, its Count II Breach of the APA claim must be dismissed.

Plaintiff's Count II Breach of the APA claim must be dismissed also because it fails to allege any facts to show that Defendants breached the APA. Plaintiff argues that Defendants breach the APA by not signing the DLI Class A Common Stock Share Agreement and DLI Class B Common Stock Purchase Agreement. However, as stated above, these two agreements govern completely separate transactions than the APA, which has no bearing on the parties' rights or obligations under the APA. Plaintiff cannot identify a single clause in the APA that requires Defendants to sign the DLI Class A Common Stock Share Agreement and DLI Class B Common Stock Purchase Agreement. The Court should not take Plaintiff's unsupported legal conclusion as true.

Plaintiff further argues that NGN/Offord breached the APA by failing to deliver assets to DLI as required by the APA.

NGN did not sell all of its assets to DLI. Section 1.1 specifically listed out nine (9) groups of assets that NGN sold to DLI and collectively defined them as the "Purchased Assets." (*See* Dkt. #37, Exh. 1, Section 1.1). More importantly, the APA contains a provision – Section 1.2, which Plaintiff intentionally omitted to mention – that expressly states that "Seller will <u>retain ownership of all Seller assets not specifically identified in Section 1.1</u> (collectively, the 'Retained Assets)." (*Id.*, Section 1.2) (emphasis added). If NGN intended to sell and DLI planned to purchase all of NGN's assets, the APA should not include Section 1.2 that specifically carve NGN's assets not identified in Section 1.1 out of the scope of the asset purchase transaction. If all NGN's assets were to be sold, there would be no need to distinguish Purchased Assets from Retained Assets.

Plaintiff attempts to argue that NGN sold all of its assets by relying on the sentence "[…] the Seller shall sell, assign, transfer, and convey to the Buyer, and the Buyer shall purchase, acquire, and accept from the Seller <u>all of the assets of the Seller used in the Business, including without limitations, those listed below</u> […]" in the APA. (*See* Dkt. #37, Exh. 1, Section 1.1). However, this sentence does not support Plaintiff's proposition. It only means that NGN was to sell all its assets listed in the nine (9) groups in Section 1.1, without any limitation. If certain assets were not used by Seller in its business, then they were not part of this transaction. "It is axiomatic that the question whether a contract is ambiguous is for the trial court." *Mann v. GTE Mobilnet of Birmingham, Inc.,* 730 So.2d 150, 154 (Ala.1999). Courts must use "all efforts to reconcile" contractual provisions. *Vesta Fire Ins. Corp. v. Liberty Nat. Life Ins. Co.*, 893 So. 2d 395, 405 (Ala. Civ. App. 2003). "Inconsistent parts in a contract are to be reconciled, if susceptible of reconciliation[...]." *Id.* Even if there is some ambiguity in the APA caused by the sentence Plaintiff

relies upon, the Court should reconcile it and interpret it in a way to make it consistent with the rest of the APA.

As to the specific items that NGN/Offord allegedly failed to deliver to DLI, Plaintiff contends that NGN/Offord were required to deliver the "[s]ponsorship, exhibit booths and tickets to two major 2021 bitcoin/blockchain conferences" – item b. of the allegedly non-delivered assets. (*See* Dkt. #54, 8). However, nowhere in the Amended Complaint did Plaintiff allege that NGN/Offord did not deliver these items to DLI. The Amended Complaint only alleges that Offord breached his duties under the Independent Contractor Agreement (not the APA) by instructing "participants in a forthcoming crypto mining conference <u>sponsored by DLI</u> to pay their registration fees for the conference to the bank account of Milwaukee SEO, LLC rather than DLI." (Dkt. #37, ¶32-a) (emphasis added). By making this allegation, Plaintiff even admitted that the conference was sponsored by it, *i.e.*, it had the sponsorship of the conference. Plaintiff cited to this same paragraph in its Response to support its claim of NGN/Offord's breach of the APA. (*See* Dkt. #54, 7-8). However, this paragraph does not contain any allegation that shows NGN/Offord failed to deliver any portion of the conference sponsorship assets to DLI.

In addition, Plaintiff claims that NGN/Offord failed to deliver "[t]he 50% interest in the pending trademark for 'Blockchain Mining'" – item a. of the allegedly non-delivered assets. (*See id.*, 8). However, Offord's alleged failure to turn over the ownership of the 50% interest in the said trademark was alleged by Plaintiff in the Amended Complaint as one of the causes that DLI terminated Offord for. This allegation is part of Plaintiff's Count I Breach of the Independent Contractor Agreement, not the breach of the APA claim. Under the Independent Contractor Agreement, Offord/NGN was retained by DLI to manage the assets DLI purchased from NGN, including this item. (*See* Dkt. #37, Exh. 2, Section 2). NGN/Offord did not breach the APA. The

reason this item was still in the control of Offord after the APA was executed was solely because he had the responsibility to manage it, not because NGN failed to deliver it to DLI. The alleged failure to turn over these assets to DLI did not occur until after Offord was terminated by DLI. Plaintiff's allegation that "[o]n information and belief, this interest was not owned by Offord or NGN and was not theirs to sell" (Dkt. #37, ¶32-f) is not supported by any facts. This allegation is nothing beyond a legal conclusion and should not be taken as true. *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 551 (2007) (declining to take as true the conclusory allegation "upon information and belief" that the companies had entered a conspiracy without enough facts to make that statement plausible).

Plaintiff also claims that NGN/Offord failed to deliver the assets alleged in paragraphs 32-b, c, d, e and g of the Amended Complaint – item c. of the allegedly non-delivered assets. (*See* Dkt. #54, 8). Same as item a., NGN/Offord was hired by DLI to manage these assets. Defendants do not dispute that the Independent Contractor Agreement does not relieve them from their obligations under the APA to deliver the Purchased Assets to DLI. However, all the Purchased Assets had been completely delivered to DLI before the parties started performing under the Independent Contractor Agreement. Otherwise, DLI would not have those assets listed in the Independent Contractor Agreement for NGN/Offord to manage and DLI would not have to pay Offord for managing any assets. Plaintiff's Amended Complaint only alleges that Offord misappropriated certain assets of DLI and failed to turn over them to DLI after he was terminated. Plaintiff only alleges facts to plead Count I breach of the Independent Contractor Agreement claim, but not Count II breach of the APA claim.

Plaintiff further argues that Defendants went outside the four corners of the Amended Complaint to present facts that contradict the Amended Complaint. (*See* Dkt. #54, 9). However,

the only fact Defendants presented to show that NGN did not sell the Telegram groups created by Offord while working for DLI after the APA consummated was the APA itself, which is Exhibit 1 of Plaintiff's Amended Complaint. (*See* Dkt. #40, 6-7). It is the Amended Complaint's own exhibit that contradicts Plaintiff's erroneous allegations that DLI owned these new Telegram groups that never existed at the time of the APA; and of which NGN never sold to DLI. And Exhibit 1 governs in this situation, not Plaintiff's conclusory allegations. *See Griffin Indus., Inc.*, 496 F.3d at 1205–06 ([w]hen the exhibits attached to the complaint contradict the general and conclusory allegations of the pleading, the exhibits govern despite a court's duty to accept a plaintiff's allegations as true).

2.    **Plaintiff's Count III Violation of Alabama Trade Secrets Act ("ATSA") Claim Must be Dismissed.**

The ATSA defines a "trade secret" as follows:

A 'trade secret' is information that:
a. Is used or intended for use in a trade or business;
b. Is included or embodied in a formula, pattern, compilation, computer software, drawing, device, method, technique, or process;
c. Is not publicly known and is not generally known in the trade or business of the person asserting that it is a trade secret;
d. Cannot be readily ascertained or derived from publicly available information;
e. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy; and
f. Has significant economic value.

*Systrends, Inc. v. Group 8760, LLC*, 959 So. 2d 1052, 1065 (Ala. 2006), quoting § 8–27–2(1).

Plaintiff argues that certain information it purchased from NGN meets the definition of "trade secret" under the ATSA. However, rather than making any factual allegations to meet the pleading requirements and show that the said information truly constitutes its trade secret, Plaintiff improperly requests the Court to analyze and interpret the allegations unrelated to this claim and draw the conclusion that the information alleged is trade secret. For example, for element f. of the

definition, Plaintiff directly admits that it fails to allege that the information has economic value. (*See* Dkt. #54, 11, footnote 11). Instead of pleading any facts to show that the information has economic value, Plaintiff requests the Court to draw baseless conclusion that if Plaintiff is willing to pay for a piece of information, then the information has economic value and is not publicly available. (*See id.*). However, the Court has no obligation to follow Plaintiff's absurd logic and make any groundless conclusion that Plaintiff asks for here. Also, the ATSA requires a piece of information to have <u>significant</u> economic value to be trade secret, not just some economic value. Plaintiff clearly fails to allege any fact to show the information it purchased from NGN constitutes a trade secret worth significant economic value under the ATSA.

In addition, Plaintiff argues that paragraphs 24-31 of the Amended Complaint make factual allegations to show Offord acquired information about DLI's business, such as information about customers, employee emails, etc., when he worked as an independent contractor of DLI and used the information to enrich defendants and/or sabotage DLI. (*See* Dkt. #54, 12-13). However, paragraph 24 of the Amended Complaint only alleges that DLI hired Offord as an Asset Mangement Director; paragraph 25 states that Offord accepted the salary paid to him as DLI's Asset Mangement Director; paragraph 26 provides that Offord held him out as DLI's Asset Mangement Director; paragraph 27 states that DLI developed multiple business units during Offord's employment; paragraph 28 alleges that Offord was obligated to act in the best interest of DLI as the Asset Mangement Director; paragraph 29 claims that Offord was responsible for sales and marketing of "miners" and overseeing DLI's marketing and sales personnel; paragraph 30 further discusses Offord's obligations under the Independent Contractor Agreement; and paragraph 31 alleges that DLI runs its sales and marketing efforts through the a domain and the Telegram channels purchased from NGN and that Offord as the Asset Mangement Director had

administrative control over them. (Dkt. #37, ¶¶24-31). None of these allegations present any facts to show what information Offord obtained from DLI and/or how the information meets the definition of "trade secret" that entitles it to the protection of the ATSA.

Plaintiff further contends that Offord misappropriated DLI's confidential information after he was terminated by DLI. (*See* Dkt. #54, 13-14). The only two related allegations in the Amended Complaint are that Offord allegedly misused the repair services and that Offord allegedly stole information from DLI's Google drive. (*See id.*, 13). Again, Plaintiff fails to allege any facts to show that the information allegedly misappropriated by Offord meet the requirements of the ATSA and constitute a "trade secret." Since no trade secret has been alleged by Plaintiff, its Count III Violation of Alabama Trade Secrets Act claim must be dismissed with prejudice and in its entirety.

### 3.  Plaintiff's Count IV Fraud Claim Must be Dismissed.

Fraud claims have always been subject to Fed.R.Civ.P. 9(b)'s heightened pleading requirements, which require a complaint "to state with particularity the circumstances constituting fraud." *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008). To satisfy Rule 9(b), the complaint must set forth:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Tello v. Dean Witter Reynolds, Inc.,* 494 F.3d 956, 972 (11th Cir. 2007). The plaintiff must plead the who, what, when, where, and how of the allegedly false statements. *See Mizzaro*, 544 F.3d at 1237.

Count IV is devoid of any particularity to satisfy the requirements of Fed. R.Civ.P. 9(b). Plaintiff has failed to allege any false statements made by Offord to DLI, the dates when and places

where any fraudulent claims allegedly occurred, and the exact contents of the alleged misrepresentations or false statements.

Plaintiff contends that NGN/Offord induced it to enter into the APA by inaccurately claiming to own the trademark application. (*See* Dkt. #54, 14). However, the only allegation Plaintiff made in the Amended Complaint relating to ownership of the said trademark is that "[o]n information and belief, this interest [in the trademark] was not owned by Offord or NGN and was not theirs to sell." (*See* Dkt. #37, ¶32-f) (emphasis added). This purely speculative allegation, supported by absolutely no facts to show Offord/NGN made any misrepresentation as to the ownership, cannot even meet the regular pleading standard, much less the heightened standard of particularity required by Rule 9(b).

Plaintiff also argues that Defendants deceived it as to Defendants' intention with respect to the stock transfer agreements – the Class A Common Stock Share Agreement and Class B Common Stock Purchase Agreement. (*See* Dkt. #54, 14-15). Plaintiff's contention is completely baseless and devoid of any factual support. Plaintiff claims that Defendants informed Plaintiff that Defendants were satisfied with these stock transfer agreements and led Plaintiff to believe that Defendants intended to execute them. (*See id.*). However, none of these are alleged in the Amended Complaint. The Amended Complaint only alleges that after DLI sent the stock transfer agreements to Offord, Offord did not object to them and Offord failed, or refused to sign or return them. (*See* Dkt. #37, ¶23). It contains no factual allegations that can show Defendants made any intentional misrepresentation as to the stock transfer agreements. The $84,000 annual base salary – not monthly salary as Plaintiff wrongfully stated in its Response – was paid by DLI to Offord as compensation for the services Offord provided to DLI as the Asset Mangement Director. (*See* Dkt. #37, Exh. 2, Section 4). There is no dispute that for some period of time Offord did provide the

services as agreed upon. It has nothing to do with the stock transfer agreements that Plaintiff argues that Defendants defrauded it about. (*See* Dkt. #37, Exh. 3 and Exh. 4).

Plaintiff further argues that the Amended Complaint alleges that Defendants "provided false and misleading material information to [DLI's] CEO and COO to disguise his actions." (*See* Dkt. #37, ¶36-4). This general and conclusory allegation without any specificity certainly cannot save this fraud claim from being dismissed with prejudice. Thus, Count IV of the Amended Complaint must be dismissed for failing to meet the heightened pleading requirements mandated by Rule 9(b).

### 4.   Plaintiff's Count V Defamation Claim Must be Dismissed as it Fails to Plead Sufficient Facts.

Under Alabama law, "the elements of a cause of action for defamation are: 1) a false *and* defamatory statement concerning the plaintiff; 2) an unprivileged communication of that statement to a third party; 3) fault amounting at least to negligence on the part of the defendant; and 4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication of the statement." *Wal-Mart Stores, Inc. v. Smitherman*, 872 So. 2d 833, 840 (Ala. 2003).

The legal authority cited by Plaintiff is completely inapplicable in this matter as *Pierson* applied Florida law, not Alabama law. See *Pierson v. Orlando Reg'l Healthcare Sys., Inc.,* 619 F.Supp.2d 1260, 1284 (M.D. Fla. 2009), aff'd, 451 Fed.Appx. 862 (11th Cir. 2012). In addition, *Caster v. Hennessey*, 781 F.2d 1569, 1570 (11th Cir. 1986) cited by Plaintiff is also not applicable here as it was a diversity action that addressed a defamation claim under Florida law.

Plaintiff's defamation claim relies solely upon one allegation that "on information and belief," Offord "communicated to DLI customers, vendors and others in the Crypto Industry that DLI's new sale channels were 'fake'" (*see* Dkt. #37, ¶ 66). It argues that the allegation based "on

14

information and belief" satisfies the pleading requirement of Rule 8. However, in *Mann v. Palmer*, the Eleventh Circuit has refused to take as true the plaintiff's allegations "upon information and belief" that the supply of pentobarbital possessed by the defendant was either expired, illegally obtained, or compounded pentobarbital, under Rule 12(b)(6). 713 F.3d 1306, 1315 (11th Cir. 2013). The well-pled allegations must nudge the claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. The "on information and belief" is not sufficient to nudge the claim across the line from conceivable to plausible. *Mann*, 713 F.3d at 1315; *see also Twombly*, 550 U.S. at 551 (declining to take as true the conclusory allegation "upon information and belief" that the companies had entered a conspiracy without enough facts to make that statement plausible).

Therefore, Plaintiff fails to plead sufficient facts to allege the defamation claim. Count V of the Amended Complaint must be dismissed.

**5.    Plaintiff's Count VI Petition for Declaratory Judgment and Rescission Must be Dismissed.**

Plaintiff asks the Court to enter a declaratory judgment finding that NGN/Offord is not an owner of DLI's stocks by relying on the false statement that NGN/Offord failed to deliver the assets stated in the APA in exchange for the DLI shares and by claiming that NGN/Offord failed to execute the stock transfer agreements – the Class A Common Stock Share Agreement and Class B Common Stock Purchase Agreement. (*See* Dkt. #54, 16-17). However, as discussed above in details in Defendants' argument #1, Plaintiff fails to allege NGN/Offord's nonperformance under the APA. NGN/Offord has fully performed its obligations under the APA and delivered all the Purchased Assets to DLI. Plaintiff had been using those NGN assets since the execution of the APA. For example, as Plaintiff admitted in the Amended Complaint, following the acquisition of the assets from NGN, it began to run most of its sales and marketing efforts through the acquired

domain and Telegram channels. (*See* Dkt. #37, ¶ 31). In addition, Offord had been managing these assets for DLI since the execution of the APA until he was terminated by DLI.

The threshold question in a declaratory judgment action is whether a justiciable controversy exists. *See, e.g., Atlanta Gas Light Co. v. Aetna Cas. And Sur. Co.*, 68 F.3d 409, 414 (11th Cir. 1998). The requirement looks to "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *GTE Directories Publishing Corp. v. Trimen America, Inc.,* 67 F.3d 1563, 1567 (11th Cir. 1995).

Here, there is no controversy that Offord is DLI's shareholder. DLI has been using the assets it purchased from NGN/Offord to conduct its business since the parties signed the APA. Offord/NGN is entitled to the Purchase Price of these assets, *i.e.* the 500,000 Class A shares and 500,000 Class B shares of DLI's stock. Plaintiff fails to allege any facts to show that Offord does not have ownership interest in DLI to justify its petition for declaratory judgment.

Moreover, as fully discussed above, the stock transfer agreements Plaintiff relies upon to wrongfully excuse its obligations to transfer the 500,000 Class A shares and 500,000 Class B shares to Offord/NGN are completely unrelated to the APA and govern two separate potential transactions that have no bearing on DLI's purchase of NGN's assets. Under the Class A Common Stock Share Agreement, DLI would issue and transfer to Offord 100,000 shares of the Class A Common Stock for the consideration of Offord's "business acumen and other such skills and talents." (*See* Dkt. #37, Exh. 3, Section 1.2). Under the Class B Common Stock Purchase Agreement, at the closing, DLI would deliver to Offord 750,000 shares of its Class B Common Stock in exchange for $750,000. (*See* Dkt. #37, Exh. 4, Sections 1.2 and 2.2). Whether Offord signs or does not sign these two  stock transfer agreements has no bearing on DLI's obligation to

transfer the 500,000 Class A shares and 500,000 Class B shares to Offord/NGN under the APA in exchange for the NGN assets. Offord by not executing the two stock transfer agreements has not prevented DLI in any manner from performing its obligations to pay the Purchase Price and does not negate the fact that Offord is a shareholder of DLI.  There is no "actual controversy" for the Court to determine. The dismissal of Plaintiff's petition for declaratory judgment is warranted.

Plaintiff's analysis of the similarity between the Alabama law and Texas law is meaningless. Only the Alabama law applies in this case because the APA that grants Offord the eligibility to be a shareholder of DLI chose Alabama law to be the governing law (*See* Dkt. #37, Exh. 1, Section 7.9). Under the applicable law, Offord is a shareholder of DLI since NGN/Offord delivered all the Purchased Assets – the consideration of the 500,000 Class A shares and 500,000 Class B shares of DLI's stock – to DLI. Offord's stock ownership should not be deprived due to DLI's own breach of the APA.

Plaintiff also seeks rescission of the APA and the two shareholder agreements as an alternative relief. (*Id.*, ¶ 77). It is axiomatic that equitable relief is only available where there is no adequate remedy at law; cases in which the remedy sought is the recovery of money damages do not fall within the jurisdiction of equity. *Rosen v. Cascade Int'l, Inc.*, 21 F.3d 1520, 1527 (11th Cir. 1994). Here, Plaintiff alleges no facts to show that monetary damages would not adequately compensate it for the alleged losses that necessitate a consideration of equitable relief. NGN has fully performed its obligations under the APA and DLI had been using NGN's assets to conduct business. The rescission sought by Plaintiff cannot be justified.

**6.     Plaintiff's Count VII Breach of the Stock Share Agreement Must be Dismissed.**

As discussed above, the two stock share agreements – the Class A Common Stock Share Agreement and Class B Common Stock Purchase Agreement – were never executed by the parties.

Plaintiff fails to allege any facts to show that Offord has ever approved them. In addition, neither parties performed under either of the agreements. The agreements should not be found to have ever become effective at any point in time. A critical element of a breach-of-contract claim under Alabama law is the that there must be a valid contract binding the parties. *Reynolds Metals Co. v. Hill,* 825 So.2d 100, 105 (Ala. 2002). Plaintiff's Count VII must be dismissed as Plaintiff fails to allege the fundamental element of a breach of contract claim – a valid contract binding the parties.

**7.      Plaintiff's Count VIII Accounting Must be Dismissed.**

Plaintiff's first argument to support its request for accounting is absurd. The fact that this is a common-law action has no bearing on the applicability of accounting. Whether this equitable remedy is available to DLI is determined by whether there is adequate remedy at law that can make Plaintiff whole, not whether the case is a common-law action or based on statutes. *See Mitsubishi Int'l Corp. v. Cardinal Textile Sales, Inc.,* 14 F.3d 1507, 1518 (11th Cir. 1994). The Amended Complaint contains no facts to show that the existing legal remedies are insufficient to redress Plaintiff's alleged damages.

Under Alabama law, the equitable remedy of accounting is available: (1) when accounts are mutual, (2) when an account is "so difficult and complicated to adjust that relief at law is inadequate," or (3) "[when] a fiduciary relationship exists between the parties." *Whitman v. Mashburn*, 286 Ala. 209, 238 (Ala. 1970).

Plaintiff did not allege any facts to show that any mutual account exists between Offord and DLI. Moreover, the Amended Complaint is devoid of any facts to demonstrate any account related to this case is complicated enough to adjust that relief at law is inadequate in this case. Furthermore, Plaintiff's self-serving contention that the Independent Contractor Agreement created a principal-agent relationship is unsupported by any facts or law. In any case, "agency is

to be determined by the facts and not by how the parties characterize the relationship." *Mardis v. Ford Motor Credit Co.*, 642 So. 2d 701, 705 (Ala. 1994). "[I]t is axiomatic that for an agency relationship to exist, there must be a right of control by the principal over the agent." *Id.* Offord was hired as an independent contractor to provide services to DLI under the Independent Contractor Agreement. (*See* Dkt. #37, Exh. 2, Section 5). The test to be applied in determining the existence of an agency relationship is whether the alleged principal reserved a right of control over the manner of the alleged agent's performance. *Terry, By & Through Terry v. Phillips 66 Co., Inc.*, 591 So. 2d 33, 36 (Ala. 1991). Plaintiff failed to allege any facts to show that it had any control over the manner of how Offord performed his work as an independent contractor. For the above-stated reasons, Plaintiff's Count VIII Accounting must be dismissed.

## CONCLUSION

Although Plaintiff has been given an opportunity to amend its complaint, it still fails to correct the factual deficiencies and fails to provide sufficient facts to plead its claims. Counts II to VIII of Plaintiff's Amended Complaint are fatally defective on their face and the dismissal of them is warranted.

Defendants, New Green Network LLC, Milwaukee SEO, LLC and Scott Offord, respectfully move this Honorable Court to enter of an order dismissing Counts II to VIII of Plaintiff, Distributed Ledger, Inc.'s Amending, Supplemental and Restated Complaint.

Respectfully Submitted:

*/s/Caroline T. Pryor*
CAROLINE T. PRYOR (PRYOC 2802)
SARAH CROSS RYAN (CROSS5186)
Attorneys for Defendants

19

**OF COUNSEL:**

CARR, ALLISON
6251 Monroe Street, Suite 200
Daphne, Alabama 36526
(251) 626-9340
(251) 626-8928 - Facsimile
cpryor@carrallison.com
sryan@carrallison.com


　　　　　　　　　　　　　　/s/Gary Zhao
　　　　　　　　　　　　　　GARY ZHAO
　　　　　　　　　　　　　　JOSEPH CARLASARE
　　　　　　　　　　　　　　Attorneys for Defendants

**OF COUNSEL:**

Smith Amundsen LLC
150 North Michigan Avenue, Suite 3300
Chicago, IL  60601
(312) 894-3377
(312) 997-3423 - Facsimile
GZhao@salawus.com

## CERTIFICATE OF SERVICE

　　　I do hereby certify that I have on this 16th day of May, 2022, electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following and that I hereby certify that I have mailed by placing a copy of same in the United States Mail, first-class postage prepaid and properly addressed to those non CM/ECF participants:

Dennis D. Green, Jr.
Law Office of Dennis D. Green, Jr., P.C.
P.O. Box 132741
Spring, TX 77393

R. Joshua Koch, Jr.
Koch & Schmidt, LLC
650 Poydras Street, Suite 2660
New Orleans, LA 70130

　　　　　　　　　　　　　　/s/ Caroline T. Pryor
　　　　　　　　　　　　　　OF COUNSEL